# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**AL-RASHAAD R. CRAFT,**

             **Plaintiff,**

**vs.**                                          **Civ. No. 17 - 0469  JCH/SMV**

**CITY OF HOBBS POLICE DEPARTMENT
et al.,**

             **Defendants.**


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* [Doc. 9], *Defendants' Motion to Strike Plaintiff's Second Amended Complaint* [Doc. 23], and *Plaintiff's Motion for Leave to File Second Amended Complaint and Third Amended Complaint* [Doc. 24]. For the reasons stated below, Defendants' motion to strike will be granted, Plaintiff's motion for leave to file an amended complaint will be granted in part, and Defendants' motion to dismiss will be denied as moot without prejudice to their right to file a new motion to dismiss in response to Plaintiff's latest complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

In his proposed amended complaint [Doc. 24-1], Plaintiff Al-Rashaad R. Craft ("Craft") alleges that on April 18, 2015, he was standing in the public square in Hobbs, New Mexico, preaching a religious sermon. Craft contends that while he was preaching, a white woman approached him and began yelling at him and waving a lighter near his face and in front of the camera that Craft had set up to record his sermon. According to the complaint, Craft ignored the woman until he started to read from his Bible, at which point she struck Craft in the face with his

Bible. Then, Craft pushed the woman away, and she lost her balance and fell. She got up and continued to shout obscenities at Craft. Members of the Hobbs Police Department arrived, took statements from the parties, and left after finding no probable cause for an arrest. However, one week later, officers arrested Craft and charged him with aggravated battery and disorderly conduct. Craft spent 17 days in the Lea County Detention Center and later lost his job as a result. The Lea County District Attorney's Office dismissed the charges based on lack of evidence.

On April 17, 2018, Plaintiff filed his original complaint [Doc. 1] in this Court. Unfortunately, Plaintiff titled this document "First Amended Complaint," an error in nomenclature that has had a domino effect through subsequent pleadings in this case. On June 29, 2017, Plaintiff served the Defendants with this pleading. The Defendants did not answer, but on August 1, 2017, the Defendants moved to dismiss [Doc. 9] the original complaint [Doc. 1]. After receiving an extension of time in which to respond to the motion to dismiss, on September 12, 2017, Plaintiff instead filed an amended complaint [Doc. 21], which he confusingly labeled "Second Amended Complaint." He did so without leave of Court. Three days later, on September 15, 2017, Plaintiff filed his response [Doc. 22] to the motion to dismiss.

On September 20, 2017, Defendants filed their motion to strike [Doc. 23]. In it, they argue that Plaintiff improperly filed his so-called "Second Amended Complaint" [Doc. 21] without leave of court more than 21 days after Defendants had filed their motion to dismiss. On the same day, Plaintiff filed his motion [Doc. 24] for retroactive leave to file the "Second Amended Complaint" [Doc. 21], as well as leave to file a new "Third Amended Complaint," which he attached as an exhibit to his motion. *See* Docs. 24 and 24-1. The purpose of the proposed amendment appears to be to add certain allegations, as well as to add Ahmad White

and Chad Wright as defendants. In their response to the motion for leave to amend, Defendants argue that the amendment would be futile.

**LEGAL STANDARDS**

**Amendment of Pleadings**

"[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court," *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330 (1971), and the Tenth Circuit will not reverse the court's decision "absent an abuse of discretion." *Wessel v. City of Albuquerque*, 299 F.3d 1186, 1197 (10th Cir. 2002) (internal quotation marks omitted). Under Rule 15, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." *Calderon v. Kan. Dept. of Soc. & Rehab. Servs*., 181 F.3d 1180, 1186 (10th Cir. 1999). The purpose of the Rule is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp*., 691 F.2d 449, 456 (10th Cir. 1982). Denial of leave is generally justified only for "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previous allowed, or futility of amendment." *Frank v. U.S. West, Inc*., 3 F.3d 1357, 1365 (10th Cir. 1993).

**Dismissal for Failure to State a Claim**

In its review of the complaint (whether the operative complaint or the proposed amended complaint), the Court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not meet this standard. *Id*. (internal quotation marks omitted). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) ("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss.").

## DISCUSSION

### I.      Motion to Strike

Under Fed. R. Civ. P. 15(a), an amended complaint may be filed without first obtaining Court authorization only under certain circumstances. The Rule provides in pertinent part that leave of Court is not required if the amended pleading is filed within 21 days after service of the pleading to be amended, *see* Fed. R. Civ. P. (a)(1)(A), or 21 days after either the filing of a responsive pleadings or service of a motion under Fed. R .Civ. P. 12(b)(6), "whichever is earlier." *See* Fed. R. Civ. P. 15(a)(1)(B). The Rule provides that, in "all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

In this case, Plaintiff's "Second Amended Complaint" [Doc. 21] was not filed until September 12, 2017, far more than 21 days after both service of the original complaint and service of the Defendants' motion to dismiss. Plaintiff failed to meet the deadline for filing an amended complaint without first obtaining leave of court to do so. Accordingly, to the extent the

"Second Amended Complaint" [Doc. 21] seeks to amend the original complaint [Doc. 1], it should be stricken for failure to obtain leave of Court prior to filing it. The motion to strike will be granted.

## II.     Motion for Leave to Amend

The Court's decision on the motion to strike, *supra*, means that the current operative pleading is the original complaint [Doc. 1], and the Court must decide whether to dismiss that complaint, allow amendment by permitting Craft to file his latest proposed amended complaint [Doc. 24-1], or to allow him to file a different amended pleading. Here, the Court concludes that while some portions of the proposed "third" amended complaint [Doc. 24-1] are futile, others may not be. Accordingly, while it will not allow Craft to file Doc.24-1, the Court will permit him to file a revised amended complaint <u>provided that Plaintiff adheres to the constraints outlined in this Memorandum Opinion and Order as well as the demands of Rule 11 of the Federal Rules of Civil Procedure</u>.

### A.     Official Capacity § 1983 Claims Against Individual Defendants

In his proposed amended complaint [Doc. 24-1], Plaintiff asserts § 1983 claims against Chris McCall (Chief of Police), Sam Cobb (Mayor of Hobbs), J.J. Murphy (Hobbs City Manager), and Chad Wright and Ahmad White (Hobbs police officers) in their official capacities. As Defendants correctly point out, § 1983 claims brought against municipal employees in their official capacities are claims against the municipality itself; an official-capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). As a result, any amendment that includes both official capacity claims against the individual defendants and the same claims against the municipality is, to that extent, futile.

5

Thus, the Court concludes that if Plaintiff elects to file an amended complaint that asserts § 1983 claims against the City of Hobbs, he may not also include the same official capacity claims against individual Defendants because those claims would be redundant.

**B.** **Personal Capacity § 1983 Claims Against Individual Supervisor Defendants**

"Section 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). For this reason, the Supreme Court has suggested the term "supervisory liability" is "a misnomer." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*.

A plaintiff therefore must show an "affirmative link" between the supervisor and the constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). This requires, for example, more than "a supervisor's mere knowledge of his subordinate's" conduct. *See Iqbal*, 556 U.S. at 677, 129 S.Ct. 1937.

> His allegations must plausibly show the defendant promulgated, created, implemented or possessed responsibility for the continued operation of [the] policy. The sheriff in *Dodds* was potentially liable because he "may have played more than a passive role in the alleged constitutional violation—he may have deliberately enforced or actively maintained the policies in question at the jail."

*Pemberton v. Patton*, 673 Fed. Appx. 860, 868 (10th Cir. 2016) (unpublished) (internal citations and quotations omitted) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010)). According to the Tenth Circuit in *Dodds*, a plaintiff can show that "affirmative link" through the three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation, and (3) state of mind. 614 F.3d at 1195.

Unfortunately, "[t]he contours of ... supervisory liability are still somewhat unclear after [the Supreme Court decided] *Iqbal*, which 'articulated a stricter liability standard for ... personal involvement.'" *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (second omission in original) (quoting *Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 768 (10th Cir. 2013)*); *see also Dodds*, 614 F.3d at 1198 ("Much has been made about [the supervisory-liability] aspect of *Iqbal*, but consensus as to its meaning remains elusive."). Thus, the Tenth Circuit's "particularized approach [still] applies with full force when a plaintiff proceeds under a theory of supervisory liability." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013). *See also Cox v. Glanz*, 800 F.3d 1231, 1249 (10th Cir. 2015). The Tenth Circuit continues to require plaintiffs to demonstrate "that each defendant acted with the constitutionally requisite state of mind" by "identify[ing] ... specific policies over which particular defendants possessed supervisory responsibility[ ] that violated their clearly established constitutional rights." *Pahls*, 718 F.3d at 1228.

In his proposed complaint, Craft alleges that Defendant Chris McCall is the Chief of the Hobbs Police Department and was responsible for the hiring, retention, training, supervision, and discipline of subordinate officers. He further alleges that it is his "reasonable knowledge and belief" that "McCall was aware that Defendant Wright other [sic] Hobbs' government officials wanted the Plaintiff off the city streets." Doc. 24-1 at ¶ 7. Craft alleges that Defendant Sam Cobb is the Mayor of the City of Hobbs, and that Defendant J.J. Murphy is the City Manager of the City of Hobbs. Doc. 24-1 at ¶ ¶ 12-13. Finally, Craft alleges in conclusory fashion that "McCall, Wright, Murphy and Cobb were aware that there was no probable cause for the arrest of the Plaintiff but wanted to find a way to charge him for a felony to lock him up and prevent him

speaking in public" based on either his race or their perception of him as a Muslim. Doc. 24-1 at ¶ 44.

Based on *Iqbal*, *Dodds*, and *Pahls*, *supra*, the Court concludes that these few, conclusory allegations regarding Defendants McCall, Cobb, and Murphy are simply insufficient. It would be futile to allow Craft to file an amended complaint asserting § 1983 claims against these three individuals unless Craft is able, within the confines of Rule 11, to add factual, non-conclusory allegations supporting their individual supervisory liability for violation of Craft's constitutional rights.

### C. Hobbs Police Department

In *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978), the United States Supreme Court held that municipalities and other local government units are "persons" to whom § 1983 applies. In *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985), the Court explained that, under *Monell*, asserting an official capacity suit against a city department's official is sufficient to name the municipality itself. In the post-*Monell* era, however, courts have dismissed § 1983 claims that have named and sought to impose liability directly upon municipal and county police *departments*. This is because "[g]enerally, governmental sub-units are not separate suable entities that may be sued under § 1983." *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (citing *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (City of Denver Police Department was not a separate suable entity)). *See, also Boren v. City of Colorado Springs*, 624 F. Supp. 474, 479 (D. Colo. 1985) (city's police department, as merely the vehicle through which city fulfills its policing functions, not a proper party); *Stratton v. Boston*, 731 F.Supp. 42, 46 (D. Mass. 1989) (action dismissed as against city police department that is not an independent legal entity); *Reese v. Chicago Police Dept.*, 602 F. Supp. 441, 443 (N.D. Ill. 1984) (Chicago Police

Department and Cook County Attorney's Office have no legal existence independent of city and county, and therefore are not suable entities); *see also Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (§ 1983 claims dismissed because City of Denver Police Department not a separate suable entity).

The above authorities persuade the Court that the City of Hobbs Police Department is not a "person" against whom § 1983 claims may be asserted. The police department simply does not exist as a separate legal entity independent of the City of Hobbs itself. Thus, all claims against the "City of Hobbs Police Department" are futile and may not be included in any amended complaint the Plaintiff may choose to file.

### D.     Claims Against City of Hobbs and Board of Commissioners of City of Hobbs

A governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind a deprivation of constitutional rights, *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell, supra*, 436 U.S., at 694, 98 S.Ct., at 2037); thus, the entity's "policy or custom" must have played a part in the violation of federal law. *Monell, supra; Oklahoma City v. Tuttle*, 471 U.S. 808, 817-818 (1985); *id*., at 827-828 (Brennan, J., concurring in judgment).

It is well settled that in order to make a claim against a municipality, a plaintiff must identify a municipal policy or custom which caused the plaintiff's injury. *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997). As explained above, the Supreme Court has made clear that there is no respondeat superior liability under § 1983. *See Ashcroft v. Iqbal*, 129 S.Ct. at 1948 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Seamons v. Snow*, 206 F.3d 1021 (10th Cir. 2000). An

entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 689 (1978). It can be held liable only for its own unconstitutional or illegal policies, and not for the tortious acts of their employees.

Municipal liability requires a showing that the entity's policies were a "deliberate or conscious choice." *Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998) (citations and internal quotations omitted). *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. at 404, 117 S.Ct. 1382 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in original)). These standards apply for allegations of liability based on failure to train and for "official de facto policies" that arise from "failing to adopt various policies to adequately protect" a class of persons. *Pulsipher*, 143 F.3d at 1367, 1309 n. 8. "[W]hen the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm," it is liable. *Pulsipher*, 143 F.3d at 1307.

In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. *Pulsipher*, 143 F.3d at 1307-08. Most cases, however, will not fall within this "narrow range of circumstances" without "a pattern of violations." *Pulsipher*, 143 F.3d at 1308.

Plaintiff's proposed amended complaint [Doc. 24-1] alleges that the City of Hobbs and its Board of Commissioners were responsible for the selection and retention of HPD officers as well as for the training, supervision, and discipline of the individual Defendants. Doc. 24-1 at ¶¶ 6, 11, 16. Plaintiff alleges that the City and the Board "were also in charge of, and responsible for, the enforcement of all policies, procedures and guidelines within the City and its departments, namely Hobbs Police Department . . ." *Id*. at ¶ 14. This is the sum total of the proposed factual allegations regarding the municipal defendants. Plaintiff makes no factual allegations of any municipal policy or custom which caused him injury. Rather, he makes the only the above conclusory allegations. Thus, his amendment of these claims is futile unless Plaintiff is able, within the confines of Rule 11, to add additional factual, non-conclusory allegations that would survive a motion to dismiss. Reasserting these claims without supporting factual allegations would be deemed frivolous—and potentially sanctionable—by this Court.

### E.      Claims Against New Individual Defendants

Craft's proposed amended complaint [Doc. 24-1] seeks to add claims against two new defendants, Hobbs police officers Chad Wright and Ahmad White. *See* Doc. 24-1 at ¶¶ 8-9, 36-38, 40, and 44. The Court concludes that it is appropriate to allow Craft to amend his complaint to include § 1983 claims against Wright and White in their personal capacities. The Rule 12(b)(6) standard to survive a motion to dismiss requires that a plaintiff's pleadings must "nudge[ ] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This, in turn, requires that the plaintiff plead facts rather than merely conclusory statements. With this admonition, the Court will permit Craft to amend his complaint to include claims against Wright and White.

## CONCLUSION

In light of the foregoing, Craft may file an amended complaint (not Doc. 24-1) that comports with the limits outlined in this Memorandum Opinion and Order. If Craft chooses to do so, he must file his amended complaint no later than **November 17, 2017**. In light of this decision, Defendants' motion to dismiss the original complaint will be denied as moot, but without prejudice to Defendants' right to file another motion to dismiss in response to the amended complaint.

If Craft chooses not to file an amended complaint by the date in the preceding paragraph of this Memorandum Opinion and Order, then no later than November 22, 2017, Defendants may refile their motion to dismiss for consideration by this Court.

**IT IS THEREFORE ORDERED** that:

(1)     *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* [Doc. 9] is **DENIED AS MOOT**;

(2)     *Defendants' Motion to Strike Plaintiff's Second Amended Complaint* [Doc. 23] is **GRANTED**, and Doc. 21 is hereby **STRICKEN**; and

(3)     *Plaintiff's Motion for Leave to File Second Amended Complaint and Third Amended Complaint* [Doc. 24] is **GRANTED IN PART** as explained herein. No later than November 17, 2017, Plaintiff may file an amended complaint provided that it meets the requirements outlined in this Memorandum Opinion and Order as well as the constraints of Rule 11.


_____
**UNITED STATES DISTRICT JUDGE**