# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**AL-RASHAAD R. CRAFT,**

        **Plaintiff,**

**vs.**                            **Civ. No. 17-0469  JCH/SMV**

**CHAD WRIGHT, in his official and**
**individual capacity, and AHMAD WHITE,**
**in his official and individual capacity,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint* [Doc. 39]. The Court has reviewed the motion as well as Plaintiff's response [Doc. 41] and Defendants' reply [Doc. 42]. For the reasons stated below, Defendants' motion will be denied.

## LEGAL STANDARD

In its review of the complaint, the Court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not meet this

standard. *Id*. (internal quotation marks omitted). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) ("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss.").

**FACTUAL BACKGROUND**

In his Fourth Amended Complaint [Doc. 38], Plaintiff Al-Rashaad R. Craft ("Craft") alleges that on April 18, 2015, he was standing in the public square in Hobbs, New Mexico, preaching a religious sermon, recording himself while doing so. Doc. 38 at ¶¶ 6-10. Craft alleges that at approximately 12:00 p.m., a white woman and man approached him. *Id*. at ¶ 10. The woman, Susan Stone, began yelling at him, using obscenities, and waving a lighter only inches from Craft's face and in front of the camera that Craft had set up to record his sermon. *Id*. at ¶ 10-11. Craft ignored the woman, but when he started to read from his Bible, Stone struck Craft in the face with his Bible. *Id*. at ¶ 12. In response, Craft pushed the woman away, and she lost her balance and fell. *Id*. at ¶ 13. Stone got up and continued to shout obscenities at Craft, walking in circles around him, smoking, and waving her lighter; she appeared intoxicated, which Craft later reported to the police. *Id*. at ¶ 14. Craft continued preaching. However, the unidentified white male then yelled profanity and pushed himself to within inches of Craft, taunting Craft and telling him to hit him; Craft ignored the man. *Id*. at ¶ 15.

A short time later, members of the Hobbs Police Department arrived and took statements from all parties. *Id*. at ¶ 17. Craft informed the police that the entire incident was on video. *Id*. at ¶ 16. One of the responding officers, Officer Ellis, determined that there was no probable cause for an arrest and that if they wanted to pursue charges they needed to contact the Hobbs City Attorney. *Id*. at ¶ 19. However, Defendant Chad Wright ("Wright"), an officer with the City of Hobbs, *Id*. at ¶¶ 3, contacted Ellis and stated that Ellis needed to find a reason to arrest Craft. *Id*.

at ¶ 18. When Officer Ellis returned to the Hobbs Police Department, he was taken off the case and advised that Craft should have been arrested and charged with a hate crime. *Id*. at ¶ 20.

Defendant Ahmad White ("White") of the Hobbs Police Department was assigned to the case and, according to the Fourth Amended Complaint, made several misrepresentations to obtain an arrest warrant. *Id*. at ¶¶ 3, 21. Among those were inaccurate assertions that Craft had made racially offensive comments, used profanity, that Craft pushed Stone without prior physical contact initiated by Stone, and that Stone and Craft were arguing. *Id*. at ¶ 21. Craft alleges that the video of the event demonstrates the falseness of these assertions, and that White either had the video or had easy access to it, but despite that White made the false assertions in the arrest warrant. *Id*. at ¶ 23.

One week later at approximately the same time, Craft went to the same public space in Hobbs to preach. *Id*. at ¶ 25. As he began setting up his video camera, several Hobbs police officers arrested him. *Id*. According to the Criminal Complaint, White charged Craft with a third degree felony, Aggravated Battery—Great Bodily Harm, as well as Disorderly Conduct, which is a misdemeanor. Warrant for Arrest, Doc. 39-1 at 3 of 8.[1] The police report also states that Craft was arrested for aggravated battery and disorderly conduct. *Id*. at ¶ 27. According to the Fourth Amended Complaint, this charge required an $11,000 cash-only bond. Doc. 38 at ¶ 26. Craft spent 17 days in the Lea County Detention Center and later lost his job with the Department of Energy as a result. *Id*. at ¶ 28, 30. The Lea County District Attorney's Office dismissed the

---

[1] Defendants contend, and Craft does not dispute, that the Court's review of the Warrant for Arrest, the Criminal Complaint, and the videotapes of the encounter at issue do not convert the motion into one for summary judgment because both exhibits are referred to in the Fourth Amended Complaint and are central to Craft's claims. The Court agrees with this conclusion for all the reasons set forth in footnote 1 to Defendant's motion [Doc. 39].

charges based on lack of evidence. *Id.* at ¶ 29. It is undisputed that no charges were brought against Stone arising from this incident.

Craft alleges that Wright and White knew that there was no probable cause to arrest Craft or were reckless in fabricating such "probable cause." *Id.* at ¶ 32. He asserts four claims of violation of his constitutional rights under 42 U.S.C. § 1983: (1) violation of his right to free speech under the First and Fourteenth Amendments, (2) violation of his right to free exercise of religion under the First and Fourteenth Amendments, (3) false arrest and violation of his right to be free from unlawful seizure under the Fourth Amendment, and (4) malicious prosecution in violation of the Fourth Amendment. He also asks for injunctive relief in the form of an injunction ordering the expungement of Craft's arrest and incarceration.

## DISCUSSION

## I.    Claims Against Defendant White

Invoking Rule 12(b)(6), Defendants argue that Craft fails to state any constitutional claim against White under §1983 because his allegations fail to show that White obtained an arrest warrant without probable cause. Doc. 39 at 3-5. White's argument does not distinguish between Craft's First and Fourth Amendment claims in this regard.

### A.    Fourth Amendment Claims

#### 1.    Legal Standard for Probable Cause

Probable cause to arrest exists if, at the moment the arrest was made, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrestee had committed or was committing an offense. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Affiants seeking arrest warrants violate the Fourth Amendment when they knowingly, or with

reckless disregard for the truth, include false statements in an affidavit, or knowingly or recklessly omit from it information which, if included, would vitiate probable cause." *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015). A reckless disregard for the truth exists when "the affiant 'in fact entertained serious doubts as to the truth of his' allegations, ... [and] a factfinder may infer reckless disregard from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968)). This rule applies to omissions as well as affirmative misstatements, if the omissions are so probative they would vitiate probable cause. *Stewart v. Donges*, 915 F.2d 572, 582 n. 13, 583 (10th Cir. 1990). Recklessness may be inferred from omission of facts which are "clearly critical" to a finding of probable cause. *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir.1990); *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir.1986)

When an affiant has knowingly or recklessly disregarded the truth, "we measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015). In short, White only violated Craft's Fourth Amendment rights if, after "setting aside" the allegedly false statements and including omitted material, there was no probable cause to arrest him. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Id*.

2.      Elements of Aggravated Battery and Disorderly Conduct

Under New Mexico law,

A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.

. . .

C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M. Stat. Ann. 1978, § 30-3-5 (1963). In New Mexico, the prosecution has the burden to prove that someone accused of aggravated battery was not acting in self defense. NMRA, Crim. UJI 14-5183 ("The burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self defense.").

NMSA 1978, Section 30-20-1(A) (1967) prohibits the following conduct as the petty misdemeanor of disorderly conduct: "engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace." This statutory provision has two elements: the conduct itself and the tendency of the conduct to disturb the peace. *State v. Salas*, 127 N.M. 686, 690, 986 P.2d 482, 486 (Ct. App. 1999). The New Mexico Supreme Court has interpreted the language of Section 30-20-1 concerning conduct which tends to disturb the peace to include conduct "'which, by causing consternation and alarm, disturbs the peace and quiet of the community.'" *State v. Doe*, 92 N.M. 100, 102, 583 P.2d 464, 466 (1978).

3.    Analysis

Here, the crimes charged for Craft's arrest were aggravated battery and disorderly conduct. The allegations of the Fourth Amended Complaint, which must be accepted as true on a motion to dismiss under Rule 12(b)(6), are that Craft was preaching his religious beliefs in a public place and was recording that preaching on his phone when Stone approached him, began yelling obscenities at him, ("You goddamn nut!" "You motherf—!"), waved her lighter in front

of Craft's phone near his face, and pushed the Bible he was holding up into his face. In response, he pushed Stone away and she fell to the ground. Stone rose and continued to yell obscenities at Craft while walking in circles around him. An unidentified white male then accosted Craft with profanity and taunts, but Craft continued preaching and reading the Bible. Craft informed the police that the whole incident was on video. Further, Craft alleges that the arrest warrant contains false statements made by Stone and witness Israel Loya-Lopez asserting that Craft said things like "all white people need to be murdered." *See* Doc. 38 at ¶ 21. White never viewed the video of the incident but instead included in the arrest warrant false statements relayed by Stone and witness Israel Loya-Lopez. Thus, Craft alleges that Defendants chose not to view the evidence, but instead sought to "find a reason" to arrest Craft.

The Court concludes that based on these factual allegations, Craft has successfully stated claims against White for violation of his constitutional rights under the Fourth amendment. From these allegations, one can reasonably infer that Craft was arrested for the charged crimes without probable cause, and that he was charged with false allegations of criminal conduct for malicious and impermissible reasons. As stated above, affiants like White who are seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in an affidavit, or knowingly or recklessly omit from it information which, if included, would undermine probable cause. Here, it is more than reasonable to infer that White knew of the existence of the video, since the allegation is that not only did Craft tell police about the video, but all witnesses seem to have admitted that they knew Craft was recording himself and that Stone was waving her lighter in front of Craft's phone in order to impair his recording. Furthermore, it is reasonable to infer that White acted with a knowing or reckless disregard for the truth when he chose either not to view the video or to ignore its

contents in favor of the witness statements made by Stone and Loya-Lopez while discounting Craft's account of events.

Here, Craft alleges that there were diametrically opposed eye-witness stories about the nature of the conduct that Craft was charged with committing, that White knew of a video that would resolve that conflict and absolve him, but White chose either not to view it or to ignore it. The videotape shows, in fact, that Craft (1) was not using profanity, (2) did not call for black people to rise up and kill all white people, and (3) did not initiate contact with Stone or anyone else at the scene. Rather, the video supports the allegations of the Fourth Amended Complaint. It shows that (1) Stone was the one using profanity, (2) Stone initiated contact with Craft by yelling at him at close range, getting physically close to him and waving her lighter near Craft's face in front of his phone, (3) Stone pushed the Bible Craft was holding in his hands into his face, and (4) only then did Craft push Stone away from him in self defense. By not viewing the video, White showed a knowing or reckless disregard for the truth.  When you include the omitted information from the videotape , it is clear that there was no probable cause to arrest Craft for either aggravated battery or disorderly conduct.

Thus, Craft has properly stated his Fourth Amendment claims against White. The motion to dismiss will be denied.

### B.      First Amendment Claims

Craft has alleged, and Defendants do not dispute [Doc. 42 at n.2], that at the time of the events in question he was engaged in religious speech that is protected by the First Amendment. Craft has also successfully alleged that White discriminated against him because of the content of that speech by charging him with crimes without probable cause. Although the Court has already found that Craft has alleged sufficient facts to support a reasonable inference that White

charged him without probable cause, White's motion to dismiss Craft's First Amendment claims should be denied for a second reason: Craft need not show that he was charged without probable cause in order for his First Amendment claims to survive a motion to dismiss.

In *Deloach v. Bevers*, 922 F.2d 618, 621-22 (10th Cir. 1990), the Tenth Circuit held that an arrest supported by probable cause violates the First Amendment if evidence showed a retaliatory motive for the arrest. Relying on *Deloach*, in *Howards v. McLaughlin*, 634 F.3d 1131, 1146 (2011), the Tenth Circuit held that a man arrested with probable cause in 2006 still stated a claim for retaliatory arrest. However, one year later the Supreme Court decided *Reichle v. Howards*, 566 U.S. 658 (2012).

In *Reichle*, the Court addressed the issue of whether the defendants had qualified immunity—that is, "whether a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support the arrest, and whether clearly established law at the time of [the plaintiff's] arrest so held." *Id*. at 663. Choosing to address only the second question, the Court found that the plaintiff had not satisfied the "clearly established" standard under the doctrine of qualified immunity. "This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of [the plaintiff's] arrest." *Id*. at 664-65. Thus, *Reichle* did not reach the issue in *Howards* (and by extension the ruling in *Deloach*) of whether there exists the right to be free from retaliatory arrest by an officer who has probable cause to arrest. Instead, the Supreme Court determined for purposes of qualified immunity analysis that its decision in *Hartman v. Moore*, 547 U.S. 250 (2006), which held that a plaintiff cannot state a First amendment *Bivens* claim for retaliatory prosecution if charges were supported by probable cause, had sufficiently muddied the waters: "At the time of Howards' arrest [in 2006],

*Hartman*'s impact on the Tenth Circuit's precedent governing retaliatory arrests [including *Deloach*] was far from clear. Although the facts of *Hartman* involved only a retaliatory prosecution, reasonable officers could have questioned whether the rule of *Hartman* also applied to arrests." *Reichle*, 566 U.S. at 666 (emphasis added).

The motion before the Court is not one for qualified immunity, however, but rather one for failure to state a claim under Rule 12(b)(6). The specific question at issue here—whether one may state a claim that an arrest not supported by probable cause violated his First Amendment rights—has not been clearly settled.[2] However, the Supreme Court has granted certiorari on the question of whether the existence of probable cause defeats a First Amendment retaliatory-arrest claim as a matter of law, *Nieves v. Bartlett*, 2018 WL 1023097 (June 28, 2018) (granting certiorari for the October 2018 term); *see id.*, Petition for Writ of Certiorari, 2018 WL 1064663, at *7 (Feb. 16, 2018).

It is possible that the Supreme Court will disagree with the Tenth Circuit on this issue. For now, the Tenth Circuit's decision in *Deloach*, which has not been overturned, suggests that such a claim may proceed. Until such time as the Supreme Court decides otherwise, and this Court must assume that Craft need not show that his arrest was not supported by probable cause in order to assert a claim under the First Amendment. For this second and alternative reason, White's motion to dismiss Craft's First Amendment claims will be denied.

---

[2] Other Courts of Appeals are split on this issue. Compare *Pegg v. Hermberger*, 845 F.3d 112, 119 (4th Cir. 2017), *Galarnyk v. Fraser*, 687 F.3d 1070, 1076 (8th Cir. 2012), and *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008), with *Ford v. City of Yakima*, 706 F.3d 1188, 1195-96 (9th Cir. 2013), and *Howards v. McLaughlin*, 634 F.3d 1131 (10th Cir. 2011).

## II.    Claims Against Defendant Wright

In the Fourth Amended Complaint, Craft alleges that after Ellis completed his investigation and determined that no criminal charges needed to be filed, Wright told Ellis that he "needed to find a reason to arrest" Craft. Craft also alleges that Wright knew that White's application for arrest warrant contained falsehood and omissions (or was reckless in not correcting them), but that nevertheless he directed White to find a reason to arrest Craft. Wright argues that these allegations are insufficient to state a claim against him.

Although these allegations against Wright are thin, they are enough to survive a motion to dismiss when taken in the light most favorable to Craft. The allegations show that Wright knew of and participated in arresting Craft without probable cause to do so. The motion to dismiss will be denied.

**IT IS THEREFORE ORDERED** that *Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint* [Doc. 39] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**