UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

AL-RASHAAD R. CRAFT,

    Plaintiff,

v.                                                                   No. 2:17-cv-00469-NF-KHR

**CHAD WRIGHT**, in his official and individual
capacity; and **AHMAD WHITE**, in his official
and individual capacity,

    Defendants.

## DEFENDANTS' MOTION FOR QUALIFIED IMMUNITY SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

COME NOW Defendants, by and through their attorneys of record, Atwood, Malone, Turner & Sabin, P.A, by Bryan Evans and Renee Gantert and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move this Court for entry of an order granting them summary judgment, on the basis of qualified immunity, and dismissing Plaintiff's Complaint with prejudice.[1]

## MOTION FOR SUMMARY JUDGMENT

1. As more fully set forth below, there is no genuine dispute as to any material fact concerning the applicability of the doctrine of qualified immunity to the actions of Defendants or to their entitlement, therefore, to summary judgment.

2. As more fully set forth below, Defendants are entitled to judgment as a matter of law.

---

[1] Plaintiff's counsel has been contacted and opposes this Motion.

1

**MEMORANDUM IN SUPPORT**

**I.**

**INTRODUCTION**

This lawsuit arises out of Detective Ahmaad White's arrest of Plaintiff on April 25, 2015 for aggravated battery and disturbing the peace. In addition to suing Detective White, Plaintiff is also suing Captain Chad Wright. The arrest stemmed from an altercation between Plaintiff and a woman named Susan Stone that occurred at the Shipp Street Plaza in Hobbs a week before. Stone and an eyewitness reported that Plaintiff had pushed her to the ground after she waved her cigarette lighter in front of the camera Plaintiff had set up to record himself preach. Plaintiff admitting pushing Stone, although, unlike Stone and the eyewitness, Plaintiff claimed she had pushed him first.

Brandon Ellis, the Hobbs police officer who initially responded to the scene, prepared a report and advised both parties how to go about pursuing charges. Susan Stone did want to press charges. Detective White was contacted about the case the next day. He re-interviewed the eyewitness and Stone, both of whom, again, reported that Plaintiff had pushed her to the ground after she waved her lighter in front of his camera. When he spoke to Ms. Stone, Detective White observed bruises on her forearm and on the back of her head, which he photographed. At this point, Detective White conferred with the District Attorney and the two determined there was probable cause to charge Plaintiff. Detective White applied for an arrest warrant, and a local magistrate judge granted the warrant application on April 23, 2015.

Notwithstanding the fact that he was arrested pursuant to a warrant issued by a local magistrate upon a finding of probable cause, Plaintiff alleges that his arrest was unconstitutional in several respects. He asserts that it violated his Fourth Amendment right to be free from unlawful

seizure and malicious prosecution, as well as his First Amendment rights to free speech and free exercise of religion. *Fourth Amended Complaint, [Doc. 38], Counts I-IV*. As illustrated herein, however, neither the evidence nor the law supports Plaintiff's claims against either Detective White or Captain Wright. His Complaint cannot survive summary judgment and should be dismissed as a matter of law.

## II.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### *The Altercation with Susan Stone*

1. On Saturday April 18, 2015, Plaintiff Al-Rashaad Craft went to the Shipp Street Plaza in Hobbs, set up his phone on a tripod, and began to record himself preaching. *Plaintiff's Fourth Amended Complaint* [Doc. 38], ¶¶ 6-7, 9-10; *Deposition of Al-Rashaad Craft,* 65:13-20, *attached hereto as Exhibit 1*.

2. Plaintiff had been in Hobbs for approximately eight months, during which time he went out and preached in public almost "every weekend, or every other weekend." *Ex. 1,* 33:12-24.

3. Plaintiff recorded his preaching and then uploaded the recordings to his YouTube channel, "Hawashinawa Ma Ri." *Ex. 1,* 30:9-12; 31:4-20.

4. While Plaintiff was preaching on this particular Saturday, a woman named Susan Stone approached him. *See Exhibit 2,* starting at 8:07;[2] *see also* [Doc. 38], ¶ 10.

5. She began waiving a lighter in front of Plaintiff's camera while proclaiming her own right to be on the public property. *See Ex. 2,* 8:07 to 9:14; [Doc. 38], ¶ 10.

---
[2] This is the eighth of ten videos Plaintiff uploaded of his sermon to his YouTube channel. It can also be located here: https://www.youtube.com/watch?v=0nBznwOVd9M&t=596s

6. Mrs. Stone carried on in this fashion for about a minute, at which point her lighter struck the Bible Plaintiff was holding, knocking it up and back into his face. *See Ex. 2,* 9:14 to 9:15.

7. Plaintiff responded by pushing Mrs. Stone to the ground. *Ex. 2,* at 9:14 to 9:17; [Doc. 38], ¶ 13.

### *Initial HPD Response*

8. The Hobbs Police Department was called. Officer Brandon Ellis responded to the scene. *See Incident Report by Brandon Ellis, attached hereto as Exhibit 3, at p. 4; See also Warrant and Criminal Complaint, attached hereto as Exhibit 4, at p. 4.*

9. Ellis spoke to Mrs. Stone first. Mrs. Stone reported that the she was waiving her lighter in front of Mr. Craft's camera and telling him she had freedom of speech too when he pushed her with both hands to the ground. *See Ex. 3, p. 5; Ex. 4, p. 4.*

10. Next, Ellis spoke to Plaintiff who also described how Mrs. Stone had approached him, waived her light in front of his camera, and talked smack to him. Plaintiff told Ellis that after about three minutes of this, Mrs. Stone pushed him and he pushed her back. *See Ex. 3, p. 5; Ex. 4, p.5.*

11. After speaking to Plaintiff, Ellis talked with Israel Loya-Lopez, who reported witnessing the incident. *Ex. 3, p. 5, Ex. 4, p. 5.*

12. Mr. Loya-Lopez told Ellis virtually the same thing that Mrs. Stone had—that she walked over and waived her lighter in front of Plaintiff's camera, that Plaintiff pushed her, and that Mrs. Stone had never touched him. *Ex. 3, p. 5; Ex. 4, p. 5.*

13. Ellis did not attempt to seize, view, obtain, or otherwise access any of the video recordings Plaintiff had been making with the phone because he did not think about it at the time. *Deposition of Brandon Ellis, 51:23—52:3, attached hereto as Exhibit 5.*

14. Ellis told both parties that a report would be written up and that they could contact the District Attorney if they wanted to pursue charges, which Mrs. Stone said she did. *See Ex. 3, p. 5;* [Doc. 38], ¶ 19.

### *Further Investigation*

15. On April 19th, 2015, the day after Plaintiff's altercation with Mrs. Stone, Detective White was assigned to the case by his supervisor. *Ex. 4, p 5; Deposition of Ahmaad White, 25:11—26:3, attached hereto as Exhibit 6.*

16. Detective White contacted Israel Loya-Lopez at his house and interviewed him about the accident. *Ex. 4, p. 6.*

17. Mr. Loya-Lopez reported that Plaintiff pushed Mrs. Stone with both of his hands and described the force as that one would use to push a 300-pound man. *Ex. 4, p. 6; refer also to Audio Recording of Detective White's Conversation with Israel Loya-Lopez, attached hereto as Exhibit 7.*

18. After concluding his interview with Israel Loya-Lopez, Detective White contacted Mrs. Stone at her home. *Ex. 4, p. 6.*

19. Mrs. Stone told Detective White the same thing she had told Officer Ellis—that she waived her lighter in front of Plaintiff's camera, he pushed her to the ground with both of his hands, and she hit her head. *Ex. 4, p 7.*

20. Mrs. Stone told Detective White she was still in pain and that she was unable to move throughout her residence like usual or sit upright without assistance. *Ex. 4, p. 6.*

5

21. Detective White took photos of bruises on Mrs. Stone's right arm and a bruise on the back of her head. *Ex. 4, p. 7; see also photos attached hereto as Exhibit 8.*

### *Warrant Application and Subsequent Arrest*

21. After interviewing Mr. Loya-Lopez and Mrs. Stone, Detective White conferred with the District Attorney, who agreed that Plaintiff should be charged with misdemeanor battery and disorderly conduct. *Ex. 4, p. 7.*

*22.* A few days later, on April 23rd, Mrs. Stone's husband, Mark, contacted Detective White to report that Mrs. Stone's pain was increasing, she was acting verbally aggressive, and she was experiencing mood swings. *Ex. 4, p. 7.*

23. Mr. Stone reported that Mrs. Stone was taken back to the hospital where a doctor informed them that Mrs. Stone had sustained a severe concussion. *Ex. 4, p. 8.*

24. Upon receiving this news Detective White contacted the DA again. They agreed Plaintiff should be charged with felony aggravated battery and disorderly conduct, a petty misdemeanor. *Ex. 4, p. 8.*

25. Detective White drafted a criminal complaint and sought an arrest warrant on the battery and disorderly conduct charges. A local magistrate judge approved the warrant application on April 23, 2015. *See Ex. 4 generally, and at p. 1.*

26. The address Plaintiff was staying at in Hobbs was unknown to Detective White, as the only address for Plaintiff that Ellis obtained was a Houston address that came from Plaintiff's driver's license. *Ex.3, p. 1; Ex. 6, 39:18-23.*

27. Two days later, on April 25, 2015, Plaintiff was found and arrested at the Shipp Street Plaza. *Ex. 4, p. 1;* [Doc. 38], ¶ 25.

28. The criminal charges against Plaintiff were later dismissed because the prosecution failed to comply with New Mexico's speedy trial requirements. *See Order Granting Motion to Dismiss, attached hereto as Exhibit 9.*

29. There is no evidence that Plaintiff's arrest was motivated by any religious bias against him. *See Ex. 1,* 187:10—188:22.

30. Captain Wright did not speak to Detective White about this incident prior to Plaintiff's arrest. He believes he must have been on days off or on vacation because he did not learn of Plaintiff's arrest until after the fact. *Deposition of Chad Wright, 134:7-13, attached hereto as Exhibit 10.*

31. There is no evidence Captain Wright had any involvement in assigning this case to Detective White, or that he otherwise had any conversations with Detective White about this incident prior to Plaintiff's arrest. *See. Ex. 1,* 182:18—183:3; *Ex. 10, 119:13-17, 125:7-20, 135:8-10.*

## III.

## ARGUMENT AND AUTHORITIES

### A. Summary Judgment Standard in Qualified Immunity Cases

The summary judgment rule is designed to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548 (1986). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In a typical case, the movant bears the initial burden of showing that the motion satisfies this standard. Defendants in civil cases can meet their burden "either by producing affirmative

evidence negating an essential element of the [Plaintiff's] claim, or by showing that the [Plaintiff] does not have enough evidence to carry its burden of persuasion at trial. *Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir. 2012); *see also Celotex,* 477 U.S. at 325.

In §1983 cases individual defendants may raise the defense of qualified immunity, which shields government officials from civil liability for conduct that does not violate clearly-established statutory or constitutional rights. *Scott v. City of Albuquerque,* 711 Fed Appx. 871, 875 (10th Cir. 2017) (citing *Pearson v Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808 (2009)). *Pauly v. White,* 874 F.3d 1197, 1214 (10th Cir. 2017) (quoting *Swanson v. Town of Mountain View,* 577 F.3d 1196, 1199 (10th Cir. 2009)). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S. Ct. 808 (2009)). "If a plaintiff fails to establish either prong, the defendant is entitled to qualified immunity." *Scott,* 711 Fed. Appx. at 875.

**B. Defendant Ahmaad White is Entitled to Summary Judgment, on the Basis of Qualified Immunity, on All of Plaintiff's Claims**

1. **Plaintiff's Fourth Amendment False Arrest Claim Fails**

    i. **Plaintiff's Fourth Amendment Claim Fails Because There Was Probable Cause for his Arrest**

"[A]n arrest is valid and does not violate the Fourth Amendment if the warrant underlying it was supported by probable cause at the time of its issuance; this holds true even if later events establish that the target of the warrant should not have been arrested." *Beard v. City of Northglenn, Colo.*, 24 F.3d 110, 114 (10th Cir. 1994). "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific

8

individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). Because of the Fourth Amendment's strong preference for warrants, reviewing courts should accord great deference to a magistrate's determination of probable cause. *United States v. Reed,* 195 Fed. Appx. 815, *822 (10th Cir. 2006). "The court's duty is 'simply to ensure that the magistrate had a substantial basis for. . . conclud[ing] that probable cause existed." *Reid v. Pautler,* 36 F. Supp. 3d 1067, 1163 (D.N.M. 2014) (quoting *Illinois v. Gates,* 462 U.S. at 236, 238-39 (1983)).

Here, there can be no question that Detective White's warrant affidavit provided the magistrate with a substantial basis for concluding there was probable cause to believe Plaintiff had committed aggravated battery and/or disorderly conduct.[3] *United States v. Turner,* 553 F.3d 1337, 1344 (10th Cir. 2009) ("the probable cause inquiry is not restricted to the particular offense, but rather requires merely that officers had reason to believe that a crime—any crime—occurred."). The affidavit presented the magistrate with the indisputable facts that:

1. Brandon Ellis responded to Shipp Street Plaza in reference to the dispute between Plaintiff and Mrs. Stone, *UMF 8*;

2. Mrs. Stone told Ellis she approached Plaintiff, waived her lighter in front of his face, and that he pushed her to the ground and she hit her head, *UMFs 9 and 19;*

3. Plaintiff himself also described to Ellis how Mrs. Stone approached him, that she pushed him and he pushed her back. *UMF 10;*

4. An eyewitness named Israel Loya-Lopez told Officer Ellis that Plaintiff pushed Mrs. Stone but that she never touched him, *UMFs 11-12;*

5. Detective White was assigned to the case and re-interviewed Mr. Loya-Lopez, who again reported that Plaintiff had pushed Mrs. Stone, and described the force as the force one would use to push a 300-pound man, *UMF*s 15-17;

6. Detective White re-interviewed Mrs. Stone, who again reported that she had waived her lighter in front of Plaintiff's Bible and he had pushed her to the ground causing her to hit her head. *UMFs* 18-19, 21;

---

[3] The arrest is constitutional so long as probable cause exists to believe that *any* crime had occurred. *United States v. Turner,* 553 F.3d 1337, 1344 (10th Cir. 2009). Thus, Plaintiff's arrest is constitutional even if the warrant affidavit only provided a substantial basis for concluding probable cause existed for one alleged crime or the other.

7. Mrs. Stone told Detective White that she was still in pain, could not move about her residence as usual, and needed assistance sitting up, *UMFs 20*;

8. Mark Stone reported to Detective White that Mrs. Stone was experiencing emotional disturbances and increased pain and had to be taken back to the hospital where a doctor said she had a severe concussion, *UMFs 22-23*.

Detective White's affidavit unquestionably established a substantial basis for the magistrate's finding of probable cause to arrest Plaintiff. In New Mexico, aggravated battery is the "unlawful touching or application of force to the person of another with intent to injure that person". NMSA §30-5-3(A). An aggravated battery is a felony when the unlawful touching or application inflicts great bodily harm on the person. NMSA §30-5-3(C). Plaintiff was charged with felony aggravated battery as well as disorderly conduct, a petty misdemeanor. Engaging in violent behavior is enough to support a disorderly conduct charge. NMSA §30-2-1(A).

In this case, Mrs. Stone reported that Plaintiff pushed her, eyewitness Israel Loya-Lopez reported that Plaintiff pushed her, and Plaintiff did not deny it.[4] *UMFs 8-12*. Pushing someone is, indisputably, violent conduct. Thus, these facts supply a substantial basis for concluding there was probable cause to arrest Plaintiff for disorderly conduct. Combined with the evidence that Mrs. Stone was in pain for days after the accident, was unable to move about her home or sit up without assistance, was experiencing emotional disturbances, and had suffered a severe concussion, the

---

[4] Plaintiff reported that Mrs. Stone pushed him first (a fact that *was* included in the warrant affidavit, s*ee UMF 10).* The possibility that Plaintiff might have had a viable self-defense claim, however, was not something Detective White was required to work out before seeking an arrest warrant. *See Sanchez v. Lebate,* 564 Fed. Appx. 371, 373 (10th Cir. 2014) (affirmative defense only defeats probable cause when it is conclusively established); *see also Gorman v. Bail,* 947 F. Supp. 2d 509, 523 (E.D. Pa. 2013) ("claims of self-defense to an assault necessarily admit involvement in a violent altercation. . . . self-defense is inherently an issue that must be decided at trial, not by a police officer or a judge at a hearing to issue an arrest warrant"). It is well-settled that "a police officer who has reasonably concluded that probable cause exists to arrest a suspect is not required to further investigate all possible defenses or claims of innocence." *Sperry v. Maes,* 592 Fed. Appx. 688, 696 (10th Cir. 2014); *Ruff v. Bd. of Regents of the Univ. of N.M.,* 2018 U.S. Dist LEXIS 11187, *31 (D.N.M. Jan. 24, 2018) ("Several cases establish that where probable cause supports an arrest warrant, an officer's failure to investigate potential problems in the victim's or witness's statements does not violate the Fourth Amendment.").

undisputed fact that Plaintiff pushed Mrs. Stone also provided a basis for finding there was probable cause to arrest Plaintiff for felony aggravated battery. Because Detective White's affidavit supplied a substantial basis for the magistrate judge's probable cause finding, Plaintiff's arrest was valid under the Constitution. Plaintiff's Fourth Amendment claim against Detective White fails as a matter of law.

> ii. The "Inaccuracies" and "Omissions" Plaintiff Alleges Were Contained in Detective White's Arrest Warrant Affidavit Would Not Have Defeated the Probable Cause Finding

Despite the foregoing, Plaintiff alleges that Detective White violated the Constitution "by making false statements about what had happened, and by omitting [from his arrest warrant application] other information showing what happened at the scene". *Fourth Amended Complaint,* [Doc. 38], ¶ 21(a)-(o) (setting forth the alleged inaccuracies and omissions). An arrest warrant violates the Fourth Amendment when the officer "knowingly…, or with reckless disregard for the truth," includes false statements in the affidavit or "knowingly or recklessly omit[s] from an arrest affidavit information which, if included, would have vitiated probable cause." *See Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007). "Allegations of negligence or innocent mistake are insufficient." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

There are many problems with Plaintiff's argument. First, even if such inaccuracies and omissions exist,[5] there is no evidence whatsoever that Detective White acted knowingly or with reckless disregard for the truth. Plaintiff's Complaint intimates that such knowledge or reckless intent can be inferred from the fact that Detective White did not view the recorded video evidence before seeking the warrant. Plaintiff believes this evidence was available to the Hobbs Police Department and would have demonstrated certain inaccuracies in the witnesses' statements. [Doc.

---

[5] Something Defendants adamantly dispute for reasons that are set forth in Defendants' Motion to Dismiss. [Doc. 39], pp. 3-6.

11

38], ¶¶ 22-23. But the undisputed evidence is that the video was *not* available to Detective White because Brandon Ellis did not obtain it when he initially responded to the scene. *UMF* 13. Because this evidence was not in Detective White's or the Hobbs Police Department's possession and because he could not get it without Plaintiff's permission or a warrant, it was reasonable for Detective White to rely on the witness accounts without taking additional steps to corroborate them. *See J.B. v. Wash. County,* 127 F.3d 919, 930 (10th Cir. 1997), (citing *United States v. Decoteau,* 932 F.2d 1205, 1207 (7th Cir. 1991) for the proposition that "if it seems reasonable to the police to believe that the eyewitness was telling the truth, they need not take any additional steps to corroborate the information. . . ."). White's failure to obtain the video evidence is not at all indicative of a knowing or reckless disregard for the truth. *Beard v. City of Northglenn, Colo.*, 24 F.3d 110, 116 (10th Cir. 1994) ("The failure to investigate a matter fully, to 'exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence' rarely suggests a knowing or reckless disregard for the truth. . . .To the contrary, it is generally considered to be token negligence 'at most.'").

Second, even if it is assumed that the alleged inaccuracies and omissions exist and even if it is assumed Detective White acted knowingly or with reckless disregard for the truth, Plaintiffs Fourth Amendment claim still fails. The alleged inaccuracies and omissions are immaterial and therefore, do not vitiate probable cause. *See e.g. Sperry v. Maes,* 592 Fed. Appx. 688, 695-96 (10th Cir. 2014) (even construing inaccuracies in a warrant affidavit as knowingly false, they were not material and did not defeat probable cause). Even if the alleged inaccuracies were removed and the alleged omissions added to Detective White's affidavit, it would still supply the probable cause needed to support the arrest warrant. Again, the affidavit would still document the witness accounts which *were all in agreement* on the key fact that Plaintiff pushed Mrs. Stone. Had the

video been available, and had Detective White viewed it, it would have only provided further evidence that Mr. Craft pushed Mrs. Stone.[6] *See UMF 7.*

        **iii. Even if there was Evidence Sufficient to Raise a Triable Issue as to Whether Detective White Included Inaccurate Information and Omitted Material in his Warrant Affidavit, and Whether he Did so Knowingly or With Reckless Disregard for the Truth, Detective White is Still Entitled to Qualified Immunity Because the Violation was Not Clearly Established**

To the extent a court could find that Detective White acted knowingly or with reckless disregard for the truth in his application for a warrant, and that such failure caused him to include false information or omit material information that would have defeated probable cause, Plaintiff cannot point to any case law that would have put Detective White on notice that he was violating the Constitution. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (internal quotations and quoted authority omitted). This requirement is designed to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). In the Tenth Circuit, a right is clearly established if Supreme Court or Tenth Circuit case law exists on point, or if the clearly established weight of authority from other circuits has found the law to be as plaintiff maintains. See *Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). The unlawfulness of the action must be apparent in light of

---

[6] The video would not have conclusively established a self-defense claim, either, as it leaves plenty of room to question whether Plaintiff's use of force was reasonable in relation to the threat posed by Mrs. Stone—a five-foot-two elderly lady who weighed about one hundred pounds. *See Ex. 2,* at 9:14 to 9:17; *Ex. 3, p. 1; see also State v. Abeyta,* 1995-NMSC-052, 120 N.M. 233, 241 (noting that self-defense is only a justification for a crime if the force used is reasonable in relation to the threat), *overruled on other grounds by State v. Campos,* 1996-NMSC-043, n.4. The video does not rule out the possibility that Mrs. Stone's touching of Plaintiff—knocking his Bible into his face by striking it with her lighter—was accidental. The same cannot be said of Plaintiff's actions. He can be heard on the video saying that "any woman who puts her hands on [him] will feel the pain of Yahawah bahasham Yahawashi," which is the Hebrew name of his God. *Ex. 2, at 9:38.* At his deposition, he acknowledged that he is the more physically dominant of the two. *Ex. 1, 170:9-14.*

preexisting law. See *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002). There was no clearly established law at the time of Plaintiff's arrest that would have put a reasonable officer in Detective White's position on notice that his actions - interviewing the putative victim and an eyewitness to a potential crime he was investigating, relying on all of the witnesses' statements (including that of the plaintiff) to draft a warrant, obtaining the warrant from a magistrate judge, and then executing it - was unlawful. Detective White is entitled to qualified immunity and Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claims.

### 2. Plaintiff's Fourth Amendment Malicious Prosecution Claim against Detective White Cannot Survive Summary Judgment

In addition to his false arrest claim, Plaintiff also alleges a claim for malicious prosecution in violation of the Fourth Amendment. [Doc. 38], Count III. To prevail on this claim, a plaintiff must establish that: 1) the defendant caused the plaintiff's continued confinement or prosecution; 2) that the original action terminated in the plaintiff's favor; 3) that no probable cause supported the original arrest, continued confinement, or prosecution; 4) the defendant acted with malice; and 5) the plaintiff sustained damages. *Wilkins v. DeReyes,* 528 F.3d 790, 799 (10th Cir. 2008). Plaintiff's claim fails on the second and third elements.

With respect to the requirement that the criminal action terminated in his favor, Plaintiff must show that the criminal charges against him were dismissed for reasons indicative of innocence and not on technical grounds having little or no relation to his guilt. *M.G. Young,* 826 F.3d 1259, 1262 (10th Cir. 2016). The charges against Plaintiff were dismissed upon a motion by Plaintiff's public defender alleging violation of Plaintiff's speedy trial rights. *See UMF 28; see also Cordova v. City of Albuquerque,* 816 F.3d 645, 652 (10th Cir. 2016) (declining to adopt a rule that speedy trial dismissals are *per se* favorable and indicative of innocence). The speedy trial dismissal of charges against the plaintiff in the *Cordova* case was not indicative of innocence

because the prosecution did not abandon its efforts and nothing else suggested the dismissal was indicative of the plaintiff's innocence. *Id.* at 654. The same is true in this case. The order of dismissal notes that the case was set for trial and that the prosecution's delay was not deliberate, but for administrative or neutral reasons. *See Ex.* 9, ¶ 11.

Of course, even if the proceedings had terminated in a manner indicative of innocence, Plaintiff's malicious prosecution claim would still fail because his arrest and charges *were* supported by probable cause, as set forth above in the previous section. *Supra, IV(B)(1)(ii-iii).* Plaintiff simply cannot establish the elements required to sustain his malicious prosecution claim. Even assuming Plaintiff could establish such a violation, Plaintiff could not show that clearly established case law was such that it would have put a reasonable officer in Detective White's position on notice that any of his actions were unlawful. Detective White is entitled to qualified immunity on this claim, and summary judgment in his favor should be entered.

### 3. Plaintiff Cannot Prevail on his First Amendment Claims against Detective White

#### i. There is no Evidence Any of Detective White's Actions were Motivated as a Response to Plaintiff's Speech

The basis for Counts I and II of the Fourth Amended Complaint are that Defendants "discriminat[ed] against Plaintiff because of the content of his religious speech" and "prevent[ed] Plaintiff from having access to a public forum." First, Defendants never prevented Plaintiff from having access to the Shipp Street Plaza. Plaintiff's own Complaint admits he had been preaching at the Plaza for almost six months[7] prior to this incident. [Doc. 38], ¶ 25. In addition, Plaintiff came back out and preached in the same location the week after the incident. *UMF* 27. There is

---

[7] Plaintiff testified that at the time of his arrest, he had been in Hobbs for eight months and that, during that time, he preached in public every weekend or every other weekend. *UMF 2*.

no evidence anyone, much less Defendants, ever prevented Plaintiff from accessing the Shipp Street Plaza either before or after his lawful arrest.

Plaintiff does not explicitly phrase his First Amendment claims as retaliation claims. Assuming, however, that is what they are, there is no evidence Plaintiff's arrest was motivated as a response to his speech. To establish a First Amendment retaliation claim the plaintiff must prove 1) he was engaged in a constitutionally protected activity; 2) the defendant-officer's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the defendant-officer's actions were substantially motivated as a response to the plaintiff's exercise of his First Amendment rights. *A.M. ex rel. F.M. Holmes,* 830 F.3d 1123, 1163 (10th Cir. 2016). Here, there is no evidence Detective White's actions were substantially motivated as a response to Mr. Craft's speech. *See UMF 29.* For that reason alone, a First Amendment Retaliation claim against Detective White would fail.

> **ii. Even if there was Evidence to Support Plaintiff's First Amendment Claims Against Detective White, He would Be Entitled to Qualified Immunity Because the Violation Was Not Clearly Established at the Time of Plaintiff's Arrest**

Even if there was evidence that Detective White's actions were motivated as a response to Plaintiff's speech, Detective White would still be entitled to qualified immunity because probable cause supported Plaintiff's arrest. This is because at that time, there was still an open question in the 10th Circuit as to whether a retaliatory arrest claim can be brought when an arrest is supported by probable cause. In *DeLoach v. Bevers,* 992 F.2d 618 (10th Cir. 1990) the Tenth Circuit said such claims could be brought. The Supreme Court called this rule into question in *Hartman v. Moore,* 547 U.S. 250 (2006) (holding that a malicious prosecution claim will not lie where probable cause exists). The Tenth Circuit reaffirmed *Deloach* in *Howards v. McLaughlin,* 634 F.3d 1131, 1131 (10th Cir. 2011), but its denial of qualified immunity to the defendant-officer(s)

in that case was reversed by the Supreme Court, on the grounds that the Tenth Circuit erred in finding that the rule was clearly established. *Reichle v. Howards,* 132 S. Ct. 2088, 2095 (2012) ("reasonable officers could have questioned whether the rule of *Harman* also applied to arrests").

After *Howards,* and up until the time of Plaintiff's arrest in April of 2015, the Tenth Circuit followed the rule that, "in the absence of but-for causation, the arresting officer is entitled to qualified immunity from a retaliatory-arrest claim." *Storey v. Taylor,* 696 F.3d 987, 997 (10th Cir. 2012). Notably, the Tenth Circuit had acknowledged the open question of whether *DeLoach* survives *Hartman,* but had declined to decide the issue. See e.g., *Wilson v. Vill. of Los Lunas*, 472 Fed. Appx. 635, 643 (10th Cir. 2014); *Pompeo v. Bd. of Regents*, 852 F.3d 973, 987 (10th Cir. 2017). If the judges of the 10th Circuit did not know where the law stood on this issue in April, 2015, then surely reasonably prudent police officers could not have been expected to either.

In light of the foregoing, even if Detective White violated Plaintiff's First Amendment rights, the violation was not clearly established at the time of Plaintiff's arrest. Defendant is entitled to qualified immunity and, thus, summary judgment in his favor should be granted.

### C. No Evidence Supports Any Claim Against Chad Wright

Plaintiff has alleged the same First and Fourth Amendment claims he brings against Detective White against Defendant Chad Wright as well. According to his Complaint, Captain Wright "advised that Ellis 'needed to find a reason to arrest Plaintiff'". [Doc. 38], ¶ 18. The undisputed facts as revealed through discovery, however, show that Captain Wright had zero involvement in this case whatsoever. He had no role in the initial response, the investigation, the warrant application, or the subsequent arrest. Wright did not author the warrant application for Mr. Craft's arrest, or arrest him, and there is no evidence he commanded or ordered Detective

White, or anyone else, to do so.[8] Plaintiff himself admits he does not "know exactly how [Wright] was involved". *See UMF 31*.

Additionally, even if there were evidence tying Captain Wright to any of the events made the basis of this suit, Plaintiff's First and Fourth Amendment claims would fail for all the same reasons these claims fail against Detective White. *See supra,* § III(B)(1)-(3). It is well settled that in order to overcome an officer's entitlement to qualified immunity a plaintiff must establish that "each defendant, through his own actions, violated the constitution." *Mayfield v. Harvey Cty. Sheriff's Dep't,* 731 Fed. Appx. 685, 688 (10th Cir. 2018). Because there is no evidence that Captain Wright violated any of Plaintiff's rights, he should be granted qualified immunity and, as such, is entitled to summary judgment.

**WHEREFORE,** premises considered, Defendants respectfully request that the Court grant their Motion for Summary Judgment, on the basis of qualified immunity, dismiss Plaintiff's Complaint and claims against them in their entirety, and for such other and further relief as the Court deems just and proper.

---

[8] Indeed, Captain Wright testified he never spoke with Detective White about this incident prior to Plaintiff's arrest. *UMF 30.* Wright believes he must have been on days off or on vacation because he did not learn of Plaintiff's arrest until after the fact. *UMF 30.* In addition, neither Lt. McEachern nor former HPD officers Ellis or Thomas testified that Captain Wright had any involvement in assigning this case to White, or any conversations with him about it prior to Plaintiff's arrest. *UMF 31.*

Respectfully submitted,

**ATWOOD, MALONE, TURNER & SABIN, P.A.**

By   */s/ Bryan Evans*
     Bryan Evans
     K. Renee Gantert
     PO Drawer 700
     Roswell, NM 88202-0700
     (575) 622-6221
     *Attorneys for Defendants*

I HEREBY CERTIFY that on September 16, 2019, I filed the foregoing instrument electronically through the Court's Mandatory Electronic Filing system which caused all parties of record to be served by electronic means, as more fully reflected on the emailed Notice of Electronic Filing received from the Court.

*Electronically Filed /s/ Bryan Evans*
Bryan Evans