```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW MEXICO
 2
    AL-RASHAAD R. CRAFT,
 3
           PLAINTIFF,
 4
    VS.                             NO. 2:17-CV-00469-JCH-SMV
 5
    CHAD WRIGHT, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;
 6  AND AHMAD WHITE, IN HIS OFFICIAL AND INDIVIDUAL
    CAPACITY,
 7
           DEFENDANTS.
 8
                    DEPOSITION OF CHAD WRIGHT
 9                       APRIL 24, 2019
                           9:05 A.M.
10                       ZEBAS LAW FIRM
                        502 W. ALTO DRIVE
11                      HOBBS, NM 88240

12         PURSUANT TO THE NEW MEXICO RULES OF CIVIL

13  PROCEDURE, THIS DEPOSITION WAS:

14  TAKEN BY:       MR. JOSEPH M. ZEBAS, ESQ.

15  REPORTED BY:    STARLA D. WIGGINS, RPR,CCR,CRR
                    STAR REPORTING SERVICE
16                  NM #11; TX #2114; NV #629
                    P.O. BOX 601
17                  LOVINGTON, NM 88260
                    (505) 449-7589
18

19

20

21

22

23

24

25
```

```
 1  investigation by Officer Ellis it is clear that he
 2  observed that there was a camera set up on a tripod in
 3  front of him, referring to Craft.  Due to this and the
 4  potential evidence the phone had, statements made by
 5  both Craft and Stone, the phone should have been seized
 6  pending a search warrant."
 7      Q.      You have never seen this memorandum prior to
 8  today?
 9      A.      No, sir.  I know that -- I know our process,
10  and if there was a tort review, or if a tort was filed,
11  I am aware that this happens, but I haven't -- I haven't
12  dissected this memo, sir.
13      Q.      Okay.  Officer Ahmaad White was assigned as
14  the detective the next day in this case, correct?
15              MR. EVANS: Objection.  Form.  Go ahead.
16      A.      I'm not sure of the date he was assigned.
17  I'm not clear on the date that he was assigned the case.
18      Q.      Okay.  If Officer White is assigned to the
19  case the following day, is our understanding, okay, do
20  you have any reason to dispute that?
21              MR. EVANS: Object to form.  Foundation.
22      A.      I just have no knowledge if that's factual
23  or not.
24      Q.      Okay.  But I'm just saying, any reason to
25  dispute that?
```

1  lunch.
2           MR. EVANS: Okay.
3           MR. REPORTER: Be back at what time?
4           THE WITNESS: 12:45.
5           MR. ZEBAS: 12:45!
6  (Recess taken, 12:23 P.M. to 1:34 P.M.)
7     Q.    Captain Wright, before the break you were
8  going to look through what's been marked as Exhibit 8 to
9  find out who would have been in charge to determine what
10 further investigation was needed with regards to the
11 April 18th, 2015 incident.
12           Were you able to find the individual that
13 made that determination?
14    A.    That's correct.  This is an old operating
15 system that we operated under during that time.  We are
16 on a new one, and I was pretty confident that it had the
17 supervisor's name, and the date and the status, which
18 the case changed to assigned or not, but I'm looking,
19 and it's not on here, so.  To be honest with you, I'm
20 not sure.
21    Q.    Okay. Good enough.  Let's go to -- let's go
22 back to the date of April 17th.  April 18th, I'm sorry,
23 2015.  And it would be in Exhibit 8.
24    A.    Okay.
25    Q.    I mean you can use it as a reference if you

*STAR REPORTING SERVICE, LLC - 505-449-7589*

```
 1  long he stayed in jail.  I had no dog in that fight.
 2      Q.      You were the Lieutenant at the time of this
 3  matter, yes?
 4      A.      Patrol.  In patrol in a different division.
 5      Q.      In a different division?
 6      A.      Yes, sir.
 7      Q.      You never had any communication with Ahmaad
 8  White with regards to Rashaad Craft?
 9      A.      I did not speak to Detective White until
10  after the arrest was made.  I can only conclude that I
11  was on a set of days off, or a vacation, or some of that
12  sort.  When I returned back to the office, I was then
13  made aware that Mr. Craft had been arrested.
14      Q.      How did you come to find that out?
15      A.      I'm not sure.  I can't remember really
16  how I --
17      Q.      Okay.  So it's your testimony you were out
18  on vacation?
19      A.      No, I said I must have been on days off.  I
20  just remember coming back to work, and it had already
21  happened while I was not in the office.
22      Q.      Okay.
23      A.      So I mean, don't pin me on vacation, because
24  I don't --
25      Q.      Fine. That's fine.  So you were off when Mr.
```

```
 1  Craft was arrested?
 2      A.      During that time frame.  The incident
 3  happened, I showed back up to work, and learned about
 4  it.
 5      Q.      And who told you about it?
 6      A.      I don't remember.  I really don't.  I don't
 7  remember.
 8      Q.      And you don't remember who assigned
 9  Detective White to the investigation?
10      A.      I have no clue.
11      Q.      Well, why was it significant enough -- when
12  you come back on patrol, are you informed of every
13  arrest that's made over the weekend?
14      A.      No, sir.
15      Q.      Why were you informed of this arrest?
16              MR. EVANS: Objection.  Foundation.
17      A.      I believe since it involved like an
18  aggravated battery where someone got hurt, it was maybe
19  just in briefing in passing.  We do pass information
20  along from briefing to briefing.  But to detail the
21  exact person who told me, I can't remember that.
22      Q.      And you don't recall what you were informed
23  as to what he was arrested?
24      A.      Very, very simple.  Very vague.  There was
25  an altercation.  A lady was pushed down, hit her head,
```