# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

AL-RASHAAD R. CRAFT,

      **Plaintiff,**

v.                                     **No. 2:17-cv-00469-NF-KHR**

CHAD WRIGHT, in his official and individual
capacity; and AHMAD WHITE, in his official
and individual capacity,

      **Defendants.**

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      COME NOW Defendants, by and through their attorneys of record, Atwood, Malone, Turner & Sabin, P.A, by Bryan Evans and Renee Gantert and, pursuant to the Court's order, submit the following proposed Findings of Fact and Conclusions of Law concerning their Motion for Summary Judgment:

## FINDINGS OF FACT

*The Altercation with Susan Stone*

1. On Saturday April 18, 2015, Plaintiff Al-Rashaad Craft went to the Shipp Street Plaza in Hobbs, set up his phone on a tripod, and began to record himself preaching. *Plaintiff's Fourth Amended Complaint* [Doc. 38], ¶¶ 6-7, 9-10; *Deposition of Al-Rashaad Craft, 65:13-20, attached as Exhibit 1 to Defendants' Motion for Summary Judgment.*

2. Plaintiff had been in Hobbs for approximately eight months, during which time he preached in public almost "every weekend, or every other weekend." *Ex. 1 to Defendants' MSJ,* 33:12-24.

3. Plaintiff recorded his preaching and then uploaded the recordings to his YouTube channel, "Hawashinawa Ma Ri." *Ex. 1 to Defendants' MSJ,* 30:9-12; 31:4-20.

4. While Plaintiff was preaching on this particular Saturday, a woman named Susan Stone approached him. *See Exhibit 2 to Defendants' MSJ,* starting at 8:07;[1] *see also* [Doc. 38], ¶ 10.

5. She began waiving a lighter in front of Plaintiff's camera while proclaiming her own right to be on the public property. *See Ex. 2 to Defendants' MSJ,* 8:07 to 9:14; [Doc. 38], ¶ 10.

6. Mrs. Stone carried on in this fashion for about a minute, at which point her lighter struck the Bible Plaintiff was holding, knocking it up and back into his face. *See Ex. 2 to Defendants' MSJ,* 9:14 to 9:15.

7. Plaintiff responded by pushing Mrs. Stone to the ground. *Ex. 2 to Defendants' MSJ,* at 9:14 to 9:17; [Doc. 38], ¶ 13.

*Initial HPD Response*

8. The Hobbs Police Department was called. Officer Brandon Ellis responded to the scene. *See Incident Report by Brandon Ellis, attached as Exhibit 3 to Defendants' Motion for Summary Judgment, at p. 4; See also Warrant and Criminal Complaint, attached as Exhibit 4 to Defendants' Motion for Summary Judgment, at p. 4.*

9. Ellis spoke to Mrs. Stone first. Mrs. Stone reported that she was waiving her lighter in front of Mr. Craft's camera and telling him she had freedom of speech too when he pushed her with both hands to the ground. *See Ex. 3 to Defendants' MSJ, p. 4; Ex. 4 to Defendants' MSJ, p. 4.*

10. Next, Ellis spoke to Plaintiff, who also described how Mrs. Stone had approached him, waived her light in front of his camera, and talked smack to him. Plaintiff told Officer Ellis that after about three minutes of this, Mrs. Stone pushed him and he pushed her back. *See Ex. 3 to Defendants' MSJ, p. 5; Ex. 4 to Defendants' MSJ, p.5.*

11. After speaking to Plaintiff, Ellis talked with Israel Loya-Lopez, who reported witnessing the incident. *Ex. 3 to Defendants' MSJ, p. 5, Ex. 4 to Defendants' MSJ, p. 5.*

12. Mr. Loya-Lopez told Ellis virtually the same thing that Mrs. Stone had—that she walked over and waived her lighter in front of Plaintiff's camera, that Plaintiff pushed her, and that Mrs. Stone had never touched him. *Ex. 3 to Defendants' MSJ, p. 5; Ex. 4 to Defendants' MSJ, p. 5.*

13. Ellis did not attempt to seize, view, obtain, or otherwise access any of the video recordings Plaintiff had been making with the phone because he did not think about it at the time. *Deposition of Brandon Ellis, 51:23—52:3, attached as Exhibit 5 to Defendants' Motion for Summary Judgment.*

---

[1] This is the eighth of ten videos Plaintiff uploaded of his sermon to his YouTube channel. It can also be located here: https://www.youtube.com/watch?v=0nBznwOVd9M&t=596s

14. Ellis told both parties that a report would be written up and that they could contact the District Attorney if they wanted to pursue charges, which Mrs. Stone said she did. *See Ex. 3 to Defendants' MSJ, p. 5;* [Doc. 38], ¶ 19.

*Further Investigation*

15. On April 19th, 2015, the day after Plaintiff's altercation with Mrs. Stone, Defendant White was assigned to the case by his supervisor. *Ex. 4 to Defendants' MSJ, p 5; Deposition of Ahmaad White, 25:11—26:3, attached as Exhibit 6 to Defendants' Motion for Summary Judgment.*

16. Defendant White contacted Israel Loya-Lopez at his house and interviewed him about the incident. *Ex. 4 to Defendants' MSJ, p. 6.*

17. Mr. Loya-Lopez reported that Plaintiff pushed Mrs. Stone with both of his hands and described the force as that one would use to push a 300-pound man. *Ex. 4 to Defendants' MSJ, p. 6; refer also to Audio Recording of White's Conversation with Israel Loya-Lopez, attached as Exhibit 7 to Defendants' Motion for Summary Judgment.*

18. After concluding his interview with Israel Loya-Lopez, Defendant White contacted Mrs. Stone at her home. *Ex. 4 to Defendants' MSJ, p. 6.*

19. Mrs. Stone told Defendant White the same thing she had told Officer Ellis—that she waived her lighter in front of Plaintiff's camera, he pushed her to the ground with both of his hands, and she hit her head. *Ex. 4 to Defendants' MSJ, p 7.*

20. Mrs. Stone told Defendant White she was still in pain and that she was unable to move throughout her residence like usual or sit upright without assistance. *Ex. 4 to Defendants' MSJ, p. 6.*

21. Defendant White took photos of bruises on Mrs. Stone's right arm and a bruise on the back of her head. *Ex. 4 to Defendants' MSJ, p. 7; see also photos attached as Exhibit 8 to Defendants' MSJ.*

*Warrant Application and Subsequent Arrest*

22. After interviewing Mr. Loya-Lopez and Mrs. Stone, Defendant White conferred with the District Attorney, who agreed that Plaintiff should be charged with misdemeanor battery and disorderly conduct. *Ex. 4 to Defendants' MSJ, p. 7.*

23. A few days later, on April 23rd, Mrs. Stone's husband, Mark, contacted Defendant White to report that Mrs. Stone's pain was increasing, she was acting verbally aggressive, and she was experiencing mood swings. *Ex. 4 to Defendants' MSJ, p. 7.*

24. Mr. Stone reported that Mrs. Stone was taken back to the hospital where a doctor informed them that Mrs. Stone had sustained a severe concussion. *Ex. 4 to Defendants' MSJ, p. 8.*

25. Upon receiving this news, Defendant White contacted the DA again. They agreed Plaintiff should be charged with felony aggravated battery and disorderly conduct, a petty misdemeanor. *Ex. 4 to Defendants' MSJ, p. 8.*

26. Defendant White drafted a criminal complaint and sought an arrest warrant, supported by his affidavit, on the battery and disorderly conduct charges. The warrant affidavit presented the versions of events reported by Plaintiff, Mrs. Stone and the eyewitness Israel Loya-Lopez. Mrs. Stone reported that Plaintiff pushed her, eyewitness Israel Loya-Lopez reported that Plaintiff pushed her, and Plaintiff did not deny it. The warrant affidavit also presented the reports of Mrs. Stone and her husband that she was still in pain days after the accident, was unable to move about her home or sit up without assistance, was experiencing emotional disturbances, and had suffered a severe concussion. A local magistrate judge approved the warrant application on April 23, 2015. *See Ex. 4 to Defendants' MSJ, generally, and at p. 1.*

27. The only address for Plaintiff that Officer Ellis obtained was a Houston address that came from Plaintiff's driver's license. *Ex.3 to Defendants' MSJ, p. 1; Ex. 6 to Defendants' MSJ, 39:18-23.* As such, Plaintiff's address or location was unknown to Defendant White prior to Plaintiff's arrest.

28. Two days later, on April 25, 2015, Plaintiff was found and arrested at the Shipp Street Plaza. *Ex. 4 to Defendants' MSJ, p. 1;* [Doc. 38], ¶ 25.

29. The criminal charges against Plaintiff were later dismissed because the prosecution failed to comply with New Mexico's speedy trial requirements. The order of dismissal expressly noted that the prosecution's delay was not deliberate but was for administrative or neutral reasons. *See Order Granting Motion to Dismiss, attached as Exhibit 9 to Defendants' Motion for Summary Judgment.*

30. There is no evidence that Plaintiff's arrest was substantially motivated by any religious bias against him, or as a response to Plaintiff's exercise of his First Amendment rights. *See Ex. 1 to Defendants' MSJ,* 187:10—188:22.

31. Defendant Wright did not speak to Defendant White about this incident prior to Plaintiff's arrest. *Deposition of Chad Wright, 134:7-13, attached as Exhibit 10 to Defendants' Motion for Summary Judgment.*

32. Defendant Wright did not have any involvement in assigning this case to Defendant White and he did not have any role in the subsequent investigation or decision to seek a warrant for Plaintiff's arrest. *See Ex. 1 to Defendants' MSJ,* 182:18—183:3; *Ex. 10 to Defendants' MSJ, 119:13-17, 125:7-20, 135:8-10.*

# CONCLUSIONS OF LAW

*Jurisdiction*

1. This Court has subject matter jurisdiction over this Complaint under 28 U.S.C. §1331 because the action arises under the laws of the United States.

*Qualified Immunity and Summary Judgment Standards*

2. In a §1983 action, individual defendants may raise the defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. *Henderson v. Glanz,* 813 F.3d 938, 951 (10th Cir. 2015) (quotations omitted).

3. Because qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial, a plaintiff's burden in opposing a motion based on qualified immunity is greater than for other summary judgment motions. *Snider v. Lincoln Cty. Bd. of Cty. Comm'rs,* 313 F. App'x 85, 91 (10th Cir. 2008).

4. Specifically, when a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *Courtney v. Okla. ex rel., Dep't of Pub. Safety,* 722 F.3d 1216, 1222 (10th Cir. 2013).

5. A right is clearly established if Supreme Court or Tenth Circuit case law exists on point, or if the clearly established weight of authority from other circuits has found the law to be as the plaintiff maintains. *Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004).

6. If a plaintiff fails to establish either prong, the defendant is entitled to qualified immunity. *Scott v. City of Albuquerque,* 711 Fed. Appx.871, 875 (10th Cir. 2017) (citing *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808 (2009)).

*Fourth Amendment—False Arrest*

7. An arrest is valid and does not violate the Fourth Amendment if the warrant underlying it was supported by probable cause at the time of its issuance. *Beard v. City of Northglenn, Colo.,* 24 F.3d 110, 114 (10th Cir. 1994).

8. Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime. *Wolford v. Lasater,* 78 F.3d 484, 489 (10th Cir. 1996).

9. Because of the Fourth Amendment's strong preference for warrants, great deference should be accorded to a magistrate's determination of probable cause. *United States v. Reed,* 195 Fed. Appx. 815, 822 (10th Cir. 2006). "The court's duty is 'simply to ensure that the magistrate had a substantial basis for. . . conclud[ing] that probable cause existed." *Reid v.*

*Pautler*, 36 F. Supp. 3d 1067, 1163 (D.N.M. 2014) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 238-39 (1983)).

10. An officer violates the Fourth Amendment when the officer "knowingly. . . , or with reckless disregard for the truth," includes false statements in an arrest warrant affidavit or "knowingly or recklessly omit[s] from an arrest affidavit information which, if included, would have vitiated probable cause." *Bruner v. Baker,* 506 F.3d 1021, 1026 (10th Cir. 2007). "Allegations of negligence or innocent mistake are insufficient." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

11. "The failure to investigate a matter fully, to 'exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence' rarely suggests a knowing or reckless disregard for the truth. . . . To the contrary, it is generally considered to be token negligence 'at most.'" *Beard,* 24 F.3d at 116. "[A] police officer who has reasonably concluded that probable cause exists to arrest a suspect is not required to investigate all possible defenses or claims of innocence." *Sperry v. Maes,* 592 Fed. Appx. 688, 696 (10th Cir. 2014).

12. In New Mexico, aggravated battery is the "unlawful touching or application of force to the person of another with intent to injure that person." NMSA §30-5-3(A). Aggravated battery is a felony when the unlawful touching or application inflicts great bodily harm on the person. NMSA §30-5-3(C).

13. Engaging in violent behavior is enough to support a disorderly conduct charge. NMSA §30-2-1(A).

14. Pushing another person to the ground, such that they suffer a concussion, constitutes violent behavior sufficient to support a charge of disorderly conduct. NMSA §30-2-1(A).

15. Defendant White's arrest warrant affidavit provided a substantial basis for the magistrate's determination that there was probable cause to arrest Plaintiff for aggravated battery and disorderly conduct.

16. There are no facts from which a reasonable juror could conclude that Defendant White knowingly, or with reckless disregard for the truth, included false statements or omitted material information from his warrant affidavit.

17. The magistrate's probable cause determination would not be defeated if the alleged inaccuracies in Defendant White's warrant affidavit were removed. Likewise, inclusion in the warrant affidavit of the alleged omissions would not have vitiated probable cause.

18. Because Defendant White's affidavit supplied a substantial basis for the magistrate's probable cause finding, Plaintiff's arrest was supported by a valid probable cause warrant, and the arrest did not violate the Fourth Amendment.

19. Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment "false arrest" claims.

*Fourth Amendment—Malicious Prosecution*

20. To prevail on a Fourth Amendment claim for malicious prosecution, a plaintiff must establish that: a) the defendant caused the plaintiff's continued confinement or prosecution; b) the original action terminated in the plaintiff's favor; c) no probable cause supported the original arrest, continued confinement, or prosecution; d) the defendant acted with malice; and e) the plaintiff sustained damages. *Wilkins v. DeReyes,* 528 F.3d 790, 799 (10th Cir. 2008).

21. Plaintiff's original arrest and prosecution was supported by probable cause.

22. The original action did not terminate in Plaintiff's favor or otherwise end in a manner indicative of innocence. It was dismissed because of the prosecution's failure to comply with speedy trial requirements.

23. Because the original arrest and prosecution were supported by probable cause and because the criminal proceedings did not terminate in Plaintiff's favor, Plaintiff cannot establish a Fourth Amendment malicious prosecution violation.

24. Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment "malicious prosecution" claims.

*First Amendment—Retaliatory Arrest*

25. To establish a First Amendment retaliation claim, the plaintiff must prove that 1) he was engaged in a constitutionally protected activity; 2) the defendant-officer's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the defendant-officer's actions were substantially motivated as a response to the plaintiff's exercise of his First Amendment rights. *A.M. ex rel F.M. Holmes,* 830 F.3d 1123, 1163 (10th Cir. 2016).

26. At the time of Plaintiff's arrest, in April of 2015, the Tenth Circuit followed the rule that, "in the absence of but-for causation, the arresting officer is entitled to qualified immunity from a retaliatory-arrest claim." *Storey v. Taylor,* 696 f.3d 987, 997 (10th Cir. 2012).

27. Defendant White's actions in this case were not substantially motivated as a response to Plaintiff's exercise of his First Amendment rights.

28. At the time of Plaintiff's arrest in April of 2015, it was not clearly established that an officer could violate an arrestee's First Amendment rights when making an arrest supported by probable cause.

29. Defendant White is entitled to qualified immunity on Plaintiff's First Amendment claims.

30. Defendant Wright did not arrest Plaintiff, order the arrest, or otherwise cause Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech.

31. Defendant Wright is entitled to qualified immunity on Plaintiff's First Amendment claims.

Respectfully submitted,

**ATWOOD, MALONE, TURNER & SABIN, P.A.**

By___*/s/ Bryan Evans*___
       Bryan Evans
       K. Renee Gantert
       PO Drawer 700
       Roswell, NM 88202-0700
       (575) 622-6221
       *Attorneys for Defendants*

I HEREBY CERTIFY that on October 7, 2019, I filed the foregoing instrument electronically through the Court's Mandatory Electronic Filing system which caused all parties of record to be served by electronic means, as more fully reflected on the emailed Notice of Electronic Filing received from the Court.

*Electronically Filed /s/ Bryan Evans*_____
Bryan Evans