IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AL-RASHAAD R. CRAFT,
        Plaintiff,

v.                                                    No. 17-CV-469-NF-KHR

CHAD WRIGHT, in his official and
Individual capacity; and AHMAD WHITE,
in his official and individual capacity,

        Defendants.

## **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT FOR QUALIFIED IMMUNITY**

        In response to Defendants Motion for Summary Judgment [Doc. 90] Plaintiff states as follows:

**I.       INTRODUCTION.**

        Al-Rashaad R. Craft ("Plaintiff") is of African-American decent and raised in a Southern Baptist household. Growing up in Houston, Texas he found himself constantly involved in his family church where his grandfather was a Southern Baptist preacher and so was his father. Growing up Craft's family was so devoted to the Christian faith that he was even sent to a Catholic grade school to further develop godly principles. On April 18, 2015 Craft was in a public forum on Ship and Broadway in Hobbs, New Mexico when he was projecting the word of God when he was accosted by a female individual by the name of Susan Stone. Mrs. Stone and her husband owned Desert Guns approximately 50 yards from the location in which Craft was giving his public sermon. While preaching, Craft was preaching towards an

open area and was in no way interfering with business or attempting to cause harm to anyone in the public. He was simply attempting to project the word of God and what he believed to be his obligation as a Christian. What the Defense fails to set forth in their Motion for Summary Judgement is that the Hobbs Police Department had been surveying Craft for some time prior to his arrest and when the arrest warrant was obtained Defendant Ahmad White went out of his way to include false statements to obtain the warrant.

For reasons more fully set forth herein, Defendant's Motion should be denied.

**II.     COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS.**

1. On April 18, 2015 Craft was standing in a public squire in Hobbs, New Mexico, preaching a religious sermon, recording himself doing so. (See, Craft Recording, Exhibit 1)

2. Craft had a Constitutional right pursuant to the First and Fourteenth Amendments to free speech and right to free exercise of religion.

3. At no time during his sermon did Craft make "racial comments like 'all white people need to be murdered' and 'the black man needs to rise up and kill all of the white people'". (See, Craft Recording, Exhibit 1, Ellis Audio Recording, Exhibit 2 and Deposition of McEachern, pp 28:11-23; 29:20-23; 31-32:15-19; 34:22-25, Exhibit 3).

4. While standing in a public square, Susan Stone approached craft and begin yelling obscenities, and waving a lighter only inch from Craft's face and in front of the Camera that Craft set up to record his sermon. (See, Craft recording Exhibit 1).

5. Repeatedly, Susan Stone called Craft a "Goddam nut" and a "Mother f***er." (See, Craft recording Exhibit 1).

6. Craft ignored the women, but when he started to read from his Bible, Stone struck Craft in the face with his Bible. In response, Craft pushed the women away, and she lost her balance and fell. (See, Craft Recording, Exhibit 1).

7. Stone got up and continued to shout obscenities at Craft, walking in circles around him, smoking, and waving her lighter and continued taunting Craft. (See, Craft Recording, Exhibit 1).

8. A short time later, Hobbs Police Officers Ellis and Thomas arrived on scene and took statements and Craft advised the officers that the entire incident was on video. (See, Craft Recording, Exhibit 1).

9. Sargent Timothy McEachern has testified that the individual that should have been arrested on the date in question was Susan Stone and not Craft. (See, Deposition of McEachern, pp 41-42:15-2, Exhibit 3).

10. The matter taking place between Craft and Stone would be considered a misdemeanor battery and therefore no arrest should have been made, the parties referred to the Hobbs City Attorney and there was no reason to take or go into Craft's phone. (Deposition of Tim McEachern, pp 44:5-15, Exhibit 3 and Deposition of Michael Thomas, pp 23-24, Exhibit 4).

11. There was no report of injury at the scene and Stone stated there was no need for an ambulance to be called. (See, Officer Ellis Audio Recording, Exhibit 2)

12. Officers Ellis and Thomas advised Mr. and Mrs. Stone that the matter involved a misdemeanor battery and no arrest cold be made; in response Mr. Stone, owner of Desert Guns, demanded the presence of a supervisor. (See, Ellis Audio Recording, Exhibit 2 @ 9:20)

13. Officer Ellis called his supervisor and advised that the locals were upset that Craft was not being arrested and was advised by Sergeant McEachern that they were attempting to find a way to get [Craft] of the street. (See, Ellis Audio Recording, Ex. 2 @ 16:48).

14. Officer Brandon Ellis further testified that he was advised by Sergeant McEachren that "Chad Wright said we needed to find a reason to arrest him." (See, Deposition of Brandon Ellis, pp 15-16:17-24, Exhibit 5)

15. At no time during Officer Ellis' interview of Stone did she ever indicate that Craft was advocating for the murder of white people and if she had it would have been documented in his report. (See, Deposition of Brandon Ellis, p 20: 5-12, Exhibit 5 and Ellis Audio Recording, Exhibit 2).

16. After questioning the witness at the scene Officer Ellis and Officer Thomas advised both Craft and Stone that this was a simple misdemeanor and if they wished to pursue charges, they were to contact the City Attorney. (See, Ellis Audio Recording, Exhibit 2)

17. Officer Ellis was removed from the case was advised that he was to have no longer involvement and Detective White was assigned to the case. (See, Deposition of Ellis, pp 62:21-24, Exhibit 5).

18. Upon being assigned to the case Defendant White interviewed Stone at her residence where White made it very clear that he was on the case and Mr. Stone states "his dreams came true" that White was assigned to the case (See, White's recording of Stone, Exhibit 6).

19. Like that of Officer Ellis' recorded interview of Stone, nowhere during Defendant White's interview of Stone does she indicate that Craft stated "all white people need to be murdered" and "the black man needs to rise up and kill all the white people." (See, Craft Recording, Exhibit 1; Officer Ellis Audio Recording, Exhibit 2; White's Recording of Stone, Exhibit 6; and Affidavit for Arrest Warrant, Exhibit 7).

20. In the years Officer Brandon Ellis was an officer of Hobbs Police Department, he had never seen an individual get arrested for a misdemeanor battery like the one in question. (See, Deposition of Brandon Ellis, pp 23-24: 25-3, Exhibit 5).

21. After Defendant White was assigned to the case, he went out of his way to make several misrepresentations to obtain an arrest warrant. (See, Affidavit for Arrest Warrant, Exhibit 7).

22. Among those inaccurate assertions were that Craft had made racially offensive comments, used profanity, that Craft pushed Stone without prior physical contact initiated by Stone, and that Stone and Craft were arguing. (See, Affidavit of Arrest Warrant, Exhibit 7).

23. On April 25th, 2015 Craft presented to the same location to conduct his public sermon. Upon setting up his tripod he was immediately detained by several

  Hobbs Police officers and transported to the local city jail and later transferred to the Lea County Detention Center where he remained until May 13, 2015. (See, Deposition of Al-Rashaad Craft, pp 198-200; 24-9, Exhibit 10)

24. At no time in his life had Craft ever been arrested or at any time charged with a crime. As a result of preaching in public in Hobbs, New Mexico he was charged with a third-degree felony and served 19 days in jail.

25. Magistrate Judge, Willie Henry indicates that Defendant Ahmad White misrepresented the facts in order obtain an arrest warrant. (See, Affidavit of Willie Henry, Exhibit 8).

### III. ARGUMENT AND AUTHORITIES

#### A. SUMMARY JUDGMENT STANDARD

"A motion for summary judgment may *only* be granted if there is *no* genuine issue as to any material fact..." *Frito-Lay, Inc. V. Retail Clerks Union*, 629 F.2d 653, 656 (10th Cir. Colo. 1980) [emphasis added, internal quotation marks omitted]. The Tenth Circuit grants Rule 56 motions sparingly, noting the motion "is drastic and should be applied with caution..." in order to afford litigants their right to trial. In order to properly protect the right to trial, the court "...must consider factual inferences tending to show triable issues in a light most favorable to the existence of such issues." *Id*. [emphasis added]. In *Tolan v. Cotton*, 572 U.S. 134 S.Ct. 1061 (2014) (decided May 5, 2014) the court found that in considering motions for summary judgment it is improper to weigh more heavily evidence offered by the moving party stating in part:

"In articulating the factual context of the case, the Fifth Circuit failed to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inference are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For that reason, we vacated its decision and remand the case for further proceedings consistent with this opinion."

The Court in *Tolan* went on to find that the lower court (5th Cir.) "did not credit directly contradictory evidence" and "[c]onsidered together, these facts lead to the inescapable conclusion that the court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion". "The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. This is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system." *Id*. Tenth Circuit case law holds that, in a summary judgment proceeding, "the movant ... bears the initial burden of 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Per Fed. R. Civ. P. 56(e), if the movant meets this burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id.* Only if the nonmovant does not present genuine issues of material fact should a court determine whether the moving party is entitled to judgment as a matter of law. *See Celotex,* 477 U.S. at 322. In the instant case, the Plaintiff has clearly demonstrated a genuine issue of material fact.

## B. LEGAL ARGUMENT.

### 1. The Evidence Clearly Demonstrates that Defendant Ahmad White is not Entitled to Summary Judgement on the Basis of Qualified Immunity.

#### i. No Probable Cause Exist for the Arrest of Craft.

Probable cause to arrest exists if, at the moment the arrest was made, the facts and circumstances within the office's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrestee had committed or was committing an offense. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Affiants seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in an affidavit, or knowingly or recklessly omit from the truth, include false statements in an affidavit, or knowingly or recklessly omit from it information which, if included, would vitiate probable cause." *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015). A reckless disregard for the truth exists when "the affiant 'in fact entertained serious doubts as to the truth of his allegations, …[and] a factfinder may infer reckless disregard from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." *United States v. Williams*, 737 F.2nd 594, 602 (7th Cir. 1984) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968)). This rule applies to omissions as well as affirmative misstatements, if the omissions are so probative they would vitiate probable cause. *Stewart v. Donges,* 915 F.2d 572, 582 n. 13, 583 (10th Cir. 1990). Recklessness may be inferred from omission of facts which are "clearly critical" to a finding of probable cause. Hale v. Fish, 899 F.2d 390, 400 (5th Cir. 1990); *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir. 1986).

When an affiant has knowingly or recklessly disregarded the truth, "we measure probable cause by (1) removing any false information from the affidavit; (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015). In order to obtain an arrest warrant Defendant White not only leaves out pertinent evidence he fabricates evidence that is no where in Officer Ellis' report, no where in Officer Ellis audio recording from when he arrived on scene and Defendant White asserts language in his sworn affidavit that simply never occurred in his attempt to obtain an arrest warrant. For example Defendant White misrepresents the following in his affidavit:

- "Susan also told Officer Ellis that Rasben had been using profanity when he preaches in the presence of children."
- "She said there was a few feet in between them and Rasben closed the distance until he was standing directly in front of her"
- "'All white people need to be murdered and the black man needs to rise up and kill all the white people'"
- "'White people should all be murdered so the black race could dominate everything.'"
- "I was also informed [by Stone] that Rasben Craft had made several statements, such as "Jihad is alive" and "that is how you deal with those type of people" after he pushed her down."
- She told me the police were contacted and EMS responded to the scene.

(See, Affidavit of Arrest Warrant, Exhibit 7).

The effort by which Defendant White went out of his way to fabricate the evidence in his affidavit to obtain an arrest warrant is disgustingly shocking to the conscious. The fact is Defendant White was aware that a video of the entire event existed that he purposefully ignored and he never took the time speak with the investigating officer, Brandon Ellis. The Defense asserts that an aggravated battery is a felony when the unlawful touching or application inflicts

9

great bodily harm on the person. NMSA §30-5-3(C) The problem with this argument is that Stone never called for an ambulance and there is nothing to substantiate injuries. In fact, Stone was up and walking around smoking cigarette within seconds of being pushed away. Remove the false information and analyze the omitted material there was clearly no probable cause for arrest.

Elements of Aggravated Battery

In the State of New Mexico, the statute for aggravated battery reads as follows:

A. Aggravated battery consists of unlawful touching or application of force to the person of another with intent to injure that person or another.

…

C. Whoever commits aggravated battery inflicting great bodily harm or so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third-degree felony.

N.M. Stat. Ann. 1978, § 30-3-5 (1963).

In New Mexico, the prosecution has the burden to prove that a "viable self-defense claim, however, was not something Detective White was required to work out prior to seeking an arrest warrant. While that might be true in most cases, in this case Defendant White was aware that a self-defense claim existed and he went out of his way to fabricate evidence in order to mislead the court into issuing an arrest warrant for aggravated battery.

ii. **The evidence clearly demonstrates that in fact Defendant White knowingly and intentionally fabricated facts in order to obtain an arrest warrant for aggravated battery.**

The Defense takes the position that "there are many problems with Plaintiff's argument. [E]ven if such inaccuracies and omissions exist, there is no evidence whatsoever that Detective White acted knowingly or with reckless disregard for the truth." This simply can not be further from the truth. The affidavit presented by Defendant White consists of at least 6 falsifications. Defendant White did not simply ignore the video he went out of his way to fabricate facts to obtain an arrest warrant. Hobbs Police officers Ellis and Thomas on the date in question stated mob "by arresting him it takes away his Fourth Amendment Right; however, the crowd was not satisfied and the owner of Desert Guns, Mark Stone wanted him off the street so he clearly, as stated in the audio, went and contacted his friend Marshall Newman. In fact, the Hobbs Police Department had been conducting surveillance of Craft in order to find a way to have him arrested. When deposed as to his knowledge of the events and presented with the photo provided by HPD Officer, Thomas testified as follows:

> Q: Do you have any understanding form your work at the Hobbs Police Department, and let me explain that. This photograph was produced to us by the City's attorneys in response to our request for any of the evidence that let to Mr. Craft's arrest.
> …
> A: Sometimes if there was a person of interest in the sort of way. So, like I'll give you an example. Like if there was like a certain person being released from prison for something, or like a motorcycle gang, sometimes they do like a BOLO kind of thing, kind of informational. A little pamphlet or something giving some basic facts and a photo.
> Q: These photographs would be taken of someone that the police either felt was engaged in some sort of criminal activity. Is that fair?
> A: I think that's fair.
> …
> Q: Since you and Officer Ellis chose not to arrest Mr. Craft, I'm wondering if you know how this ended up being assigned to Detective White leading to Mr. Craft being arrested.

> A: I'm not certain.
> Q: Have you ever worked on other cases, other calls like this were you or other responding officers did not make an arrest, and then someone else later went out and did arrest subjects.
> A: Not on a call like this.
> Q: What's the distinction that you are drawing?
> A: Domestics, felonies.
> Q: So if there's a domestic violence incident, or felony, perhaps you might get a call out, and don't make the arrest, but somebody else later on comes in, and does so?
> A: Yes, sir.
> Q: Okay. But no on an incident of this degree, is that true?
> A: That's correct.

(See, Deposition of Officer Michael Thomas, pp 19-21: 23-15, 25-26, 19-25, Exhibit 4 and HPD Surveillance photo of Craft, Exhibit 9).

It is clear that Defendants White was disinterested in Craft's personal video "because they wanted to find a way to arrest him" and the video would further exonerate Craft from any wrongdoing. Every officer and/or reasonable civilian who has reviewed the video of the interaction between Stone and Craft has asked: "…and why was Craft arrested?" Again, as set forth in the sworn testimony of Ellis, the recording of Ellis from the date of the event and the surveillance phots, the only why Craft could have been arrested was by fabricating evidence to obtain an arrest warrant. This was not a matter of mere reckless disregard on the part of Defendants White and Wright, this was a matter of blatant disregard for the rights of Craft. The Defense can attempt all day long to state "that the video was not available to Detective White"; however, the video could have easily been obtained and Defendants didn't want it because they knew what would it would show and they believed they are above the law. The only way Craft could have been arrested was by Defendant White fabricating facts that never existed. (See, Affidavit of Magistrate Court Judge, Willie Hennery, Exhibit 8).

12

### iii. Neither Defendants White or Wright are entitled to Qualified Immunity.

When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff, who must clear two hurdles to defeat the defendant's motion. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). The plaintiff must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity. *See id*. The Court has the freedom to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). "A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that his actions violate that right." *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1200 (10th Cir. 2009). While the plaintiff does not have to present a case with an identical factual situation, the plaintiff must show legal authority making it "apparent that in the light of pre- existing law a reasonable official would have known that the conduct in question violated the constitutional right at issue." *Id*. (internal quotation marks and ellipsis omitted). In determining whether a right was clearly established, the Court looks for Supreme Court or Tenth Circuit precedent on point or clearly established weight of authority from other courts finding the law to be as the plaintiff maintains. *See id*. As shown herein, the case law in the Tenth Circuit and U.S. Supreme Court as well as New Mexico State Court was clear that a reasonable officer would have known that the shooting and killing of Reyna who posed no threat to Taylor or to the public was unconstitutional.

## 2. Officer White Violated Craft's Constitutional Rights.

As supported by the aforementioned evidence, White's actions were clearly not reasonable, and his actions are contrary to clearly established constitutional rights. As such, he is not entitled to qualified immunity.

## 3. The Law Has Clearly Established that White's Actions Violated Constitutional Protections.

A key issue in applying the qualified immunity defense to specific cases is determining whether the right plaintiff claims was violated had been clearly established prior to the incident giving rise to the suit. *Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984). In making a claim for qualified immunity, the Defense asserts: "There was no clearly established law at the time of Plaintiff's arrest that would have put a reasonable officer in Detective White's position on notice that his actions…of interviewing witness (including that of plaintiff)" was unlawful. Certainly, Defendant White was or should have been taught that you don't misrepresent facts in an affidavit to obtain an arrest warrant. Any reasonable police officer knows that seeking an arrest warrant violates the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in an affidavit, or knowingly or recklessly omit pertinent information from an affidavit. *Puller v. Baca*, 781 F3d 1190, 1197 (10th Cir. 2015). In fact, both Officers Ellis and Thomas at the scene advised the mob, including Mr. and Mrs. Stone, that Craft had a Fourth Amendment right from unlawful arrest. (See, Audio of Officer Ellis, Exhibit 2). Defendant White clearly ignored the findings of Officers Ellis and Thomas and as Officer Ellis Testified in his deposition "…that even it was a petty misdemeanor crime that I was most likely going to have to obtain an arrest warrant for the subject due to

Lieutenant Wright at the time stating that we needed to find a reason to arrest [Craft]." (See, Deposition of Brandon Ellis, pp 59:16-20, Exhibit 5). Officer Ellis was aware there was no legal basis for the arrest of Craft and thereby, Defendant White was assigned who knowingly, or with reckless disregard for the truth, included false statements in an affidavit, or knowingly or recklessly omitted pertinent information from an affidavit.

   4. **For reasons stated above and herein, Defendant White maliciously prosecuted Craft in violation of his Fourth Amendment Rights.**

On the date in question Craft was exercising his right to free speech and freedom of religion. The locals; including various member of the Hobbs Police Department were not happy about it and made sure he was removed from the streets. Arrested and removed in spite the fact Craft was in a public forum and in no way in violation of any ordinances. While exercising his First Amendment rights when he was approached by the wife of a local gun owner who begin yelling obscenities which included ("You goddamn nut! "You mother-!") over and over while she waived a lighter in his face and then struck him in the face with his bible.

The Defense asserts that in order to assert a Fourth Amendment violation Plaintiff must establish: 1) defendant caused the confinement or prosecution; 2) that he original action terminated in plaintiff's favor; 3) that no probable cause supported the original arrest, continued confinement, or prosecution; 4) the defendant acted with malice; and 5) the plaintiff sustained damages. The Defense claims that Plaintiff cannot meet the second and third elements. The evidence clearly demonstrates otherwise.

Craft was arrested for the charged crimes without probable cause and was charged with false allegations of criminal conduct for malicious and impermissible reasons. As stated above,

15

affiants like White who are seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in affidavit, or knowingly or recklessly omit form it information which, if included, would undermine probable cause. (See, Affidavit of Judge Henry, Exhibit 8). Also important to note, that the Defense claims that he charge was dismissed on a technicality and this is also in accurate. The Defense/prosecution was fully aware that the State did not have a case and made several plea offers to the Plaintiff, which were all refused. The state ultimately filed a Noli Prossequi in the criminal matter.

Regarding element three, from the onset there was no probable cause for arrest, and this was made clear by Officers Ellis and Thomas. Nevertheless, Defendant White went out of this way to fabricate evidence and with disregard for the truth presented an affidavit that consisted multiple misrepresentations that he himself created to obtain an arrest warrant. As set forth in the attached exhibits and the affidavit of Judge Henry, there was insufficient evidence for the arrest of Craft and but for Defendant Whites fabrications, he would have never been arrested. Clearly, Craft's Fourth Amendment Rights have been violated.

    **5.**     **Violation of Craft's First Amendment Rights.**

    **i.**     **Evidence clearly demonstrates that Defendants wanted to put a stop to Craft's public preaching.**

On April 18, 2015, Craft had been living in Hobbs for approximately 6 months while on contract with the Waste Isolation Pilot Project (WIPP). This is a program outside of Carlsbad, New Mexico in which nuclear waste is stored in underground salt beds. On weekends, Craft would enjoy fulfilling what he believed to be his Christian obligation by public preaching the

word of God. Every Saturday afternoon for approximately 6 months he would set up his tri-pod on the public form of Ship and Broadway and film himself preaching from his King James Bible and then post his videos online. While this was a public forum used for concerts and other local public events, evidently Hobbs was not ready for a 6 foot African-American man preaching on its public streets.

Hobbs PD directed their officers to conduct surveillance on this outsider while Craft continued his street preaching. While HPD typically doesn't normally surveil regular citizens unless they are related to gang or drug activities, this black street preacher was considered a threat to society and under careful watch. (See Surveillance Photo attached, Exhibit 9). When Susan Stone approached Craft, she intended to provoke him. She and her husband were good friends with City Commissioner Monty Newman and had strategized how to get this nuisance off their public square. After the incident on April 18th, Officer White went to the Stones home to discuss the matter and was welcomed with open arms exclaiming, "When I found out you were on the case my dream came true", as he was welcomed into their home. (See, Recording of White at Stone's residence, Exhibit 6). Defendant White and others simply didn't want Craft on the Hobbs Public streets and made sure they put a stop to his preaching. As officer Ellis advised when he arrived on scene, there was no indication that craft was using language that would give rise to disorderly conduct and thereby could not be charged for anything. (See, Ellis Recording, Exhibit 2). Craft was most certainly stripped of his First Amendment Right to freedom of speech.

ii. **What is clear is that Craft has a First Amendment Right to exercise his freedom of speech/religion in the manner in which he was exercising it and what is further clear is**

**he was not violating any laws and thereby need not show he was charged without probable cause in order for his First Amendment claims to survive a motion to dismiss.**

The Defense asserts that after *Howards v. McLaughlin*, 634 F.3d 1131, 1131 (10th Cir. 2011) a malicious prosecution claim will lot lie where probable cause exists. In the instant case there was absolutely no probable cause for the arrest of Craft and but for the malicious misleading affidavit submitted by Defendant White an arrest warrant would not have been issued. Moreover, Craft was in no way threatening to the public or making any attempt to incite violence. He was merely peaching while black. In *DeLoach*, a case involving both a retaliatory arrest and a retaliatory prosecution, the Court held that "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper" 922 F.2d 618, 620 (1990). Again, Officers Ellis and Thomas understood in April of 2015 there was absolutely no basis for the arrest of Craft and there is no indication that the Supreme Court would disagree.

C.   Defendant Chad Wright is as liable for the actions of Defendant Wight if not more. After Ellis completed his investigation, he called his supervisor, Sargent McEachern who advised that Lieutenant Wright wanted Craft arrested. A directive that Ellis knew would be a violation of Craft's Constitutional rights. (See, Audio recording of Officer Brandon Ellis, Exhibit 2). Officer Ellis made this clear in his deposition testimony. (See, Deposition of Brandon Ellis pp 90-92:15-8, Exhibit 5).

**IV.   CONCLUSION**

Summary judgment is inappropriate when the evidence presented by the parties is susceptible of different interpretations or inferences by the trier of fact. *Randle v. City of Aurora*,

69 F.3d 441, 453 (10th Cir. 1995). "[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* at 453. Plaintiffs contend that after reviewing the evidence presented, this Court should deny Defendants' motion for summary judgment.

          Respectfully Submitted by:
          ZEBAS LAW FIRM, LLC
          /s/ Joseph M. Zebas
          Joseph M. Zebas
          P.O. Box 1675, Hobbs, NM 88241
          (575)393-1024
          *Attorney for Plaintiffs*

IT IS HEREBY CERTIFIED that the foregoing pleading was filed electronically through the CM/ECF system, causing the following parties or counsel of record to be served by electronic, means, as more fully reflected on the Notice of Electronic Filing on this date:

/s/Joseph M. Zebas
Joseph M. Zebas